Orlando ALMADA, Petitioner,

v.

The STATE of Wyoming, Respondent.

No. 98–74.

Supreme Court of Wyoming.

Dec. 21, 1999.

Representing Petitioner: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel. · Argument by Ms. Domonkos.

Representing Respondent: Gay V. Woodhouse, Chief Deputy Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stephen E. Weichman, Special Assistant Attorney General. Argument by Mr. Weichman.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Petitioner Orlando Jose Marie Almada (Almada) entered into a plea agreement with the State, reserving his right to appeal pursuant to W.R.Cr.P. 11. The plea agreement was conditioned on his right to appeal from four adverse determinations of law by the district court. Specifically, he appeals from the denial of his motion to remand for a meaningful preliminary hearing, motions to dismiss for alleged speedy trial and speedy preliminary hearing violations, motion to suppress wiretap evidence and motion to suppress search evidence.

Almada's right to a speedy trial or preliminary hearing was not violated, as the majority of the delay occurred with the consent of Almada through express waivers of that right and four continuance motions. The district court did not err when it denied his motion for remand for a meaningful preliminary hearing because there is no right to discovery at that stage of a criminal proceeding. The slight inaccuracy in the affidavit supporting the request for a search warrant for Almada's residence did not affect the validity of the warrant or the search, and the warrant was supported by sufficient facts to support a finding of probable cause.

Wyoming's Communication Interception Act does not require a court order before

obtaining information through the use of electronic devices when one of the parties has consented to the recording and transmission of the conversation.[1] Finally, although we are not bound by them, we find the cases decided by the United States Supreme Court and a majority of our sister states most persuasive in their consideration of the constitutionality of participant monitoring without court authorization. Accordingly, we hold the use of transmitting and recording devices in Almada's home did not violate his state constitutional right against unreasonable search and seizure. Therefore, we affirm.

## ISSUES

Petitioner Almada presents the following issues, in the form of arguments, for review:

I. The district court abused its discretion in denying petitioner's motion to suppress wiretap evidence.

II. The district court abused its discretion by denying petitioner's motion to dismiss for speedy trial or preliminary hearing violations.

III. The district court abused its discretion in granting an order upon writ of review which reversed the justice court's granting of petitioner's request for discovery.

IV. The district court abused its discretion in denying petitioner's motion to suppress search evidence.

Respondent State did not submit a statement of the issues.

## FACTS[2]

On four occasions in May 1996, Almada sold marijuana and cocaine to two buyers who, in turn, delivered the drugs to confidential informants working for the Wyoming Department of Criminal Investigation (DCI). On the basis of affidavits prepared by DCI

agents, the justice court issued a warrant to search Almada's apartment. The State's Information, charging Almada with conspiracy to deliver controlled substances, resulted in the issuance of a warrant for his arrest on the same day.

Arrangements were made for a large purchase of cocaine from Almada on June 4, 1996. On that day, Almada invited an undercover DCI agent, the two confidential informants, and one of the buyers into his home. The DCI agent and one of the confidential informants were wearing microcassette recorders and body transmitters. Immediately after he sold the cocaine to the DCI agent, Almada was arrested, the search warrant was executed, and officers found additional controlled substances and drug paraphernalia in the apartment.

After several continuances and motion hearings, which resulted in orders adverse to his defense, Almada entered into a conditional plea agreement with the State and changed his plea in the district court on June 9, 1997. Almada reserved the right to seek review of the district court's adverse rulings on four of his pretrial motions: 1) the denial of his motion to remand for a meaningful preliminary hearing or to dismiss counts from an amended information; 2) the denial of a motion to dismiss for violation of his right to a speedy preliminary hearing and speedy trial; 3) the denial of his motion to suppress "wiretap evidence;" and 4) the denial of his motion to suppress evidence he claims was obtained in an illegal search of his apartment.

## DISCUSSION

### I. Motion for Meaningful Preliminary Hearing

■ Almada contends he did not receive a meaningful preliminary hearing because he was denied discovery before the preliminary

1. For simplicity, we will use the term "participant monitoring" which refers to the electronic monitoring (whether or not recorded) by a law enforcement agent of a conversation where one of the parties to the conversation has previously consented to the activity. *See People v. Collins*, 438 Mich. 8, 475 N.W.2d 684, 685 n. 1 (1991).

2. Because Almada entered a conditional guilty plea, there was no jury trial. The facts presented were found in charging documents, motions, the plea agreement, the change of plea hearing and court orders. Generally, the facts are not in dispute. Rather, Almada challenges the trial court's application of the law to the facts.

hearing. Almada sought the cassette tapes of his conversations with the confidential informants and the identities of the undercover DCI agent and confidential informants before the preliminary hearing by way of a motion to the justice court pursuant to W.R.Cr.P. 16 and a subpoena duces tecum served on one of the DCI agents. At his July 15, 1996, preliminary hearing, Almada asked for a continuance because he had not received the tapes. The justice court ordered the State to allow Almada to listen to and copy the tapes and reset the preliminary hearing. However, the State sought a writ of review in the district court to determine whether the tapes were discoverable before the preliminary hearing. The district court ruled Almada was not entitled to discovery before the preliminary hearing and remanded the matter to the justice court.

■ We review discovery rulings for abuse of discretion. *Dodge v. State*, 562 P.2d 303, 307 (Wyo.1977). Wyoming law concerning discovery and preliminary hearings is clear:

> Rule 5.1(b), W.R.Cr.P., provides an accused the right to subpoena and call witnesses during his preliminary hearing, but this right is not absolute. *Garcia v. State*, 667 P.2d 1148, 1154 (Wyo.1983). This right must be viewed in light of the true constitutional purpose of the preliminary hearing, which is to obtain a determination by a neutral, detached fact finder that there is probable cause to believe a crime has been committed and that the defendant committed it. *Id.* And although some discovery is the inevitable by-product of a preliminary hearing, discovery is not the purpose of the hearing. *Id.* Thus, discretion is left to the court to determine whether or not the purpose for which a defendant seeks to introduce testimony from a witness whom he has subpoenaed fits within the realm of discovery rather than the determination of probable cause. *Id.* To this end, we have stated that it is incumbent upon counsel to explain the relevance to the issue of probable cause of the testimony he seeks to introduce at the preliminary hearing, pursuant to a sufficient offer of proof. *Id.* at 1155.

*Madrid v. State*, 910 P.2d 1340, 1343 (Wyo. 1996).

■ Almada does not claim the information he sought was relevant to the determination of probable cause. The tapes he sought contained recordings from the drug transaction, and the subpoena requested the presence of those individuals who were a party to the transaction. However, both the State and Almada had witnesses prepared to testify about the transaction at the preliminary hearing. The finding of probable cause may be based upon hearsay evidence, in whole or in part. *Hennigan v. State*, 746 P.2d 360, 369 (Wyo.1987). Although Almada has not informed the Court of the reason for his request, other than the need for a "meaningful preliminary hearing," we infer that he questioned the reliability of the testimony from the State. In *Hennigan*, we held "[i]n our judgment, the disclosure at trial of unreliable evidence is a sufficient control upon the prosecutor in the presentation of cases.... Questions of credibility and weight of the evidence are appropriately determined at trial, and there is no due process requirement for a determination of these issues in the course of determining probable cause." *Hennigan*, 746 P.2d at 369 (citing *Wilson v. State*, 655 P.2d 1246 (Wyo.1982)). In a felony case the right of discovery attaches under W.R.Cr.P. 16 only after the defendant has been bound over for trial in the district court. The justice court abused its discretion when it ordered the State to permit discovery of material which did not pertain to probable cause. As Judge Rogers opined in his well-reasoned order on writ of review:

> In very few areas of the law has the Wyoming Supreme Court spoken so unequivocally and emphatically as it has in defining and reaffirming the purpose and the parameters of a preliminary hearing. These rules have been established and never modified in a string of approximately sixteen cases covering a period of the last twenty years.

The district court did not err in reversing the justice court's discovery order and quashing the subpoena duces tecum. Almada still received a meaningful preliminary hearing because the purpose of the hearing, establish-

ing "the existence of probable cause to hold the accused for prosecution," was not affected by the absence of the information he sought through his discovery motions. *Haight v. State*, 654 P.2d 1232, 1235 (Wyo. 1982) (quoting *Weddle v. State*, 621 P.2d 231, 239 (Wyo.1980)).

## II. Speedy Trial

Almada contends the lengthy delay between his arrest and acceptance of his plea violated both W.R.Cr.P. 48 and state and federal constitutional guarantees of a speedy trial. "This court performs a *de novo* review of a conviction to ensure that the mandates of W.R.Cr.P. 48 and the constitutional guarantee of a speedy trial have been met." *Vargas v. State*, 963 P.2d 984, 989 (Wyo.1998) (citing *Yung v. State*, 906 P.2d 1028, 1032 (Wyo.1995)).

### A. Rule 48.

■ W.R.Cr.P. 48 is a procedural mechanism for enforcing the accused's constitutional right to a speedy trial. *Yung*, 906 P.2d at 1032. Rule 48(b)(6) requires dismissal of any criminal case not tried within 120 days after arraignment unless the case was continued in accordance with the rule. Almada claims the district court violated Rule 48 when approximately 142 days passed between arraignment and acceptance of his plea by the district court. However, Almada's reliance on *Mehring v. State*, 860 P.2d 1101, 1110 (Wyo.1993), to argue the speedy trial clock continued to tick until the district court accepted his plea on July 16, 1997,[3] is misplaced. *Mehring* did not implicate speedy trial issues and is not relevant.

Almada was arraigned on February 24, 1997. On June 9, 1997, the scheduled trial date, Almada participated in a change of plea hearing before the district court, and the court accepted his plea. Only 105 days passed between his arraignment and the conditional plea. Therefore, Rule 48 was not violated.

### B. Constitutional Right to Speedy Trial.

■ The right to a speedy trial is guaranteed to the criminally accused by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. *Phillips v. State*, 597 P.2d 456, 460 (Wyo.1979). This right is also secured by Art. 1, § 10 of the Wyoming Constitution. *Id.* Although compliance with Rule 48 will go a long way in protecting a defendant's right to a speedy trial, it is also necessary to examine speedy trial issues in light of the constitutional factors which provide the underpinnings of the rule. *Hall v. State*, 911 P.2d 1364, 1370 (Wyo.1996).

■ We have accepted the balancing test set out in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and consider the following factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) prejudice to the defendant resulting from the delay. *Hall*, 911 P.2d at 1370–71; *Phillips*, 597 P.2d at 460. We weigh these factors in light of all relevant circumstances. *Yung*, 906 P.2d at 1032.

■ For constitutional purposes the speedy trial clock started ticking when Almada was arrested. *Id.* Almada was arrested on June 4, 1996, and he did not enter his plea until June 9, 1997. This lengthy delay raises speedy trial concerns and is sufficient to warrant further analysis. *Springfield v. State*, 860 P.2d 435, 451 (Wyo.1993) (citing *Wehr v. State*, 841 P.2d 104, 112 (Wyo.1992) (320 and 238 days); *Osborne v. State*, 806 P.2d 272, 277 (Wyo.1991) (244 and 301 days)); *Phillips*, 597 P.2d at 460.

The second *Barker* factor is the reason for the delay. In its denial of Almada's motion to dismiss, the district court found all delays at the preliminary stage of the proceedings were occasioned by Almada. We agree. The justice court continued the June 18, 1996, and July 15, 1996, preliminary hearings at Almada's request.

---

**3.** The district court did not sign the order for the change of plea until July 16, 1997. However, as that order makes clear, the plea agreement "was fully disclosed and accepted by the Court as required by Rule 11(d), W.R.Cr.P. . . . ." during the change of plea hearing on June 9, 1997. Almada's claim to the contrary is not borne out by the record.

On July 15, 1996, before the scheduled preliminary hearing, the justice court ordered the State to comply with Almada's discovery requests. In response, the State filed a petition for writ of review in opposition to the justice court's discovery order and a motion for stay of proceedings with the district court. The district court stayed the proceedings and the justice court vacated the August 6, 1996, preliminary hearing date.

The district court accepted briefs from the parties and heard oral argument on October 23, 1996. Almada filed a demand for speedy preliminary examination and trial in the justice court on November 4, 1996. The justice court refused to set a preliminary hearing date until the district court resolved the discovery issue and lifted the stay of proceedings. The district court filed its decision on the petition for writ of review on December 11, 1996, the preliminary hearing was finally held on December 16, 1996, and arraignment was set for December 20, 1996.

The district court granted Almada's motion to reset the arraignment for January 3, 1997. On that date Almada filed a motion to disqualify Judge Rogers pursuant to W.R.Cr.P. 21.1. Judge Guthrie set the arraignment for January 7, 1997, but subsequently granted Almada's fourth motion for a continuance. Almada was finally arraigned on February 24, 1997, and the district court scheduled the trial for June 9, 1997.

■ Almada was responsible for all delays except the one occurring between his preliminary hearing date scheduled for August 6, 1996, and his arraignment scheduled for December 20, 1996. This delay occurred while the district court considered the State's petition for writ of review concerning the justice court's discovery order. Time required for the due administration of justice is excluded when computing time in a speedy trial analysis absent substantial prejudice to the accused. The district court heard oral argument on October 23, 1996, and issued its ruling on December 11, 1996. Almada was not prejudiced by this reasonable delay inherent while the court considered legal issues presented by the parties' motions. On balance, the four-and-a-half-month delay occasioned by the district court's review of the

justice court's discovery order is easily outshined by the seven months of delay for which Almada was solely responsible.

■ Next, we consider Almada's assertion of his right to a speedy trial. When Almada appeared before the justice court on June 6, 1996, he orally waived his right to a speedy preliminary hearing. He filed a written waiver of his right to a speedy preliminary hearing on June 14, 1996, and did not file his demand for speedy preliminary examination and trial in the justice court until November 4, 1996, although he knew all proceedings in the justice court were stayed pending determination on the writ of review.

The State suggests Almada's demands were less than sincere. We agree. His demand during a stay in the proceedings before the justice court appears to be no less than an attempt to abuse the judicial system. After the preliminary hearing was held, the district court continued the arraignment twice at Almada's request, and he never filed a speedy trial demand in the district court. Almada's less than vigorous assertions of his right to a speedy trial are given little weight, especially in light of his initial waiver and request for two additional continuances **after** asserting that right. *See Hall*, 911 P.2d at 1371.

■ The fourth and final *Barker* factor is whether the accused was prejudiced by the delay. Almada claims various tapes and personal property were lost and he suffered anxiety while being jailed for "hundreds of days." The burden is on the petitioner to show prejudice. *Osborne*, 806 P.2d at 278. Because Almada fails to explain how the delay caused the loss of tapes or his personal property, we turn to his anxiety claim. While it is true that some inconvenience and anxiety are part and parcel of the filing of any criminal charge, Almada has not demonstrated that he suffered any extraordinary or unusual prejudice. *See Hall*, 911 P.2d at 1371. Absent any demonstration of prejudice caused by the delay, this factor in the speedy trial analysis weighs in favor of the State.

When these four factors are weighed and balanced in light of all the relevant circum-

**306** ■

stances, it is clear that Almada was not denied his constitutional right to a speedy preliminary hearing and trial. Although the delay between arrest and his change of plea was over a year, the other three *Barker* factors weigh heavily against Almada. We affirm the district court's order denying Almada's motion to dismiss for violation of his right to a speedy trial and preliminary hearing.

### III. *Motion to Suppress Intercepted Communications*

■ In his motion to suppress, Almada alleged the use of transmitters and recorders to monitor and record conversations which took place in his home, without first obtaining a warrant or other court order, violated both the Wyoming Communication Interception Act,[4] and Art. 1, § 4 of the Wyoming Constitution.[5] The district court determined a judicial order was not necessary in this situation and denied the motion. No facts are in dispute and the trial court did not make any factual findings. Statutory interpretation and legal issues involving whether an unreasonable search and seizure occurred in violation of an accused's statutory rights are reviewed *de novo. Witt v. State,* 892 P.2d 132, 137 (Wyo.1995); *Gronski v. State,* 910 P.2d 561, 563 (Wyo.1996).

### A. *Wyoming Communication Interception Act.*

Almada claims DCI's use of transmitting and recording devices during the June 4, 1996, cocaine transaction violated the Act. He contends Wyo.Stat.Ann. § 7–3–602(b)(v) requires peace officers to obtain a court order authorizing the use of these devices pursuant to Wyo.Stat.Ann. §§ 7–3–605 and –606. The State counters that Wyo.Stat.Ann. § 7–3–602(b)(iv), not (b)(v), applies to this situation

4. Wyo.Stat.Ann. §§ 7–3–601 et seq. (LEXIS 1999) (hereinafter, the "Act.")

5. Art. 1, § 4 of the Wyoming Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particu-

because one of the parties to the conversation consented to the interception of the communication.

■ This Court's primary focus when interpreting a statute is to determine the legislature's intent upon enactment. *Tietema v. State,* 926 P.2d 952, 953 (Wyo.1996). "The initial step in arriving at a correct interpretation ... is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker Land & Cattle Co. v. Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). This Court gives effect to every word, clause and sentence and construes all components of a statute in *pari materia. Parker,* 845 P.2d at 1042. We presume the legislature enacts statutes with full knowledge of the existing condition of the law and with reference to it. *Parker,* 845 P.2d at 1044. "We will not construe statutes in a manner which renders any portion meaningless or produces absurd results." *McAdams v. State,* 907 P.2d 1302, 1304 (Wyo.1995).

The relevant sections of Wyo.Stat.Ann. § 7–3–602 (LEXIS 1999) provide:

(a) Except as provided in subsection (b) of this section, no person shall willfully:

(i) Intercept any wire, oral [6] or electronic communication;

\* \* \* \* \* \*

(b) Nothing in subsection (a) of this section prohibits:

\* \* \* \* \* \*

(iv) Any person from intercepting an oral, wire or electronic communication where the person is a party to the communication or where one (1) of the parties to the communication has given pri-

larly describing the place to be searched or the person or thing to be seized.

6. Wyo.Stat.Ann. § 7–3–601(a)(vii) (LEXIS 1999) defines "oral communication" as "any oral communication uttered by a person who **reasonably expects and circumstances justify the expectation** that the communication is not subject to interception but does not include any electronic communication[.]" (Emphasis added.)

or consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act;

(v) A peace officer from intercepting, using or disclosing to another peace officer in the course of his official duties any wire, oral or electronic communication pursuant to an order permitting the interception under this act[.]

Subsection (a) of Wyo.Stat.Ann. § 7-3-602 generally prohibits interception of certain communications, while subsection (b) provides a list of exceptions to that general rule. Almada does not dispute that the confidential informant consented to the interception of the conversations. However, he maintains that the Act also requires compliance with Wyo.Stat.Ann. §§ 7-3-605 and -606 before any communication may be intercepted. Wyo.Stat.Ann. § 7-3-605 delineates the persons who may apply for court authorization and under what conditions. Among other things, Wyo.Stat.Ann. § 7-3-606 describes the application procedure for obtaining the court's authorization.

Almada argues that because peace officers were involved in the interception of his conversation during the drug transaction, only subsection (b)(v) applies and the officers had to comply with Wyo.Stat. Ann. §§ 7-3-605 and -606. However, subsection (b)(iv) excludes from the statutory prohibition the interception of a communication by "any person" "where one (1) of the parties to the communication has given prior consent...." Almada's position necessarily removes peace officers from the ranks of "any person." If the legislature intended to remove peace officers from the ranks of "any person," it certainly could have done so, either in subsection (iv): "any person, except peace officers as described in (b)(v)," or in subsection (v): "peace officers must comply with Wyo.Stat.Ann. §§ 7-3-605 and -606 before taking any action under this Act, including (b)(iv)." We hold Wyo.Stat.Ann. § 7-3-602(b)(iv) encompasses participant monitor-

ing performed by "any person," including peace officers.

Almada contends this reading of the statute renders subsection (b)(v) and sections -605 and -606 meaningless. However, peace officers clearly have the technical capability to intercept communications which do not require the consent of any party. *See e.g., People v. Collins*, 438 Mich. 8, 475 N.W.2d 684, 686-87 (1991). In *Collins*, the Michigan Supreme Court compared participant monitoring with nonconsensual surveillance in the context of the federal wiretap statutes and constitutional challenges to their use. *Id.* Illustrations of nonconsensual surveillance requiring a court order included a police officer listening outside with a radio receiver in *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), and federal agents attaching a listening and recording device to the outside of a public telephone booth in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Act clearly requires a court order for "covert," nonconsensual communication interception by peace officers, where the peace officer is not a participant in the communication being intercepted. Based on just these two examples, subsection (b)(v) is not left meaningless by this interpretation of the statute.

Reading the statute in its entirety and accepting the ordinary and obvious meaning of the words, as we are required to do, only Wyo.Stat.Ann. § 7-3-602(b)(v) refers to "an order permitting the interception under this act[.]" Because Wyo.Stat.Ann. § 7-3-602(b)(iv) does not refer to a court order, no such order was required, and -605 and -606 were not implicated when law enforcement officers intercepted the communication with Almada during the June 4, 1996, drug transaction.

## B. *Wyoming Constitution.*

In his motion to suppress the wiretap evidence, Almada claimed that the June 4, 1996, search and seizure of his residence and person contravened the United States and Wyoming Constitutions.[7] Almada concedes the

---

7. Although Almada's motion to suppress claimed violations of the United States and Wyoming Constitutions and he did not mention the Act in

his motion to suppress, his oral argument before the trial court in the motions hearing was limited to the requirements of the Act. He did not make

United States Supreme Court has determined participant monitoring without a warrant does not violate the Fourth Amendment to the United States Constitution. *See United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Therefore, he urges this Court to perform an independent state constitutional analysis on the use of "participant monitoring" without prior court authorization. Taking the cue provided in *Saldana v. State*, 846 P.2d 604, 622 (Wyo. 1993) (Golden, J., concurring), Almada presents his argument that the Wyoming Constitution provides more protection than the United States Constitution in the participant monitoring context using the factors from *State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986). Those factors are:

> (1) the textual language; (2) the differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.

*Saldana*, 846 P.2d at 622 (Golden, J., concurring) (quoting *Gunwall*, 720 P.2d at 811).

▮ The issue of whether Art. 1, § 4 of the Wyoming Constitution provides more protection than the Fourth Amendment in situations where a body wiretap was used without a search warrant has never been decided by this Court. However, *Vasquez v. State*, 990 P.2d 476 (Wyo.1999), considered whether our constitution provided more protection than the United States Constitution in another search and seizure context. Though not directly on point, *Vasquez* offers guidance for our analysis.

*Vasquez* involved the search of the passenger compartment in a vehicle incident to a lawful arrest. *Vasquez*, at 478. Because the United States Supreme Court had already decided the issue in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), Vasquez looked for protection in the Wyoming Constitution. After an independent analysis of Wyoming's search and seizure provision, we held the search lawful. *Vasquez*, at 489.

a constitutional argument in the motions hearing. On appeal Almada addresses the Act and

Relying heavily on *Vasquez* for the first part of our analysis, we consider Almada's assertion that application of the *Gunwall* factors requires the conclusion that his rights were violated because the state constitution provides more protection than the Federal Constitution in this context. *Vasquez* addressed the textual language, the differences in text and the state constitutional history factors by noting that when the Supreme Court began restricting protection under the Fourth Amendment in the late 1970s and 1980s, the state courts were free "to return to analyzing these issues under their own constitutions, and leading constitutional authorities soon began urging independent interpretations for state courts." *Id.* at 484. However, our "recent search and seizure jurisprudence has not distinguished between the two provisions," *id.*, and "[t]hose courts independently analyzing their state constitutions ... usually have either a long tradition of such independent analysis or have sufficient constitutional history to permit departing from federal precedent through principled reasoning." *Id.* Unfortunately, we have neither, making reliance on the text, the differences in text and state constitutional history factors found in *Gunwall* speculative at best. *Id.*

Analyzing the structural differences between the state and federal constitutions, *Vasquez* recognized:

> No state constitutional history exists which would lead us to believe that Wyoming initially included individual rights as a strong statement of societal values or because it intended to provide greater protection of individual rights. The most that can be definitely ascertained from the differences in the constitutional histories of the two documents may well be explained by the simple fact that it was the prevailing view that protection of individual rights was considered to be the province of the state and the federal rights acted only upon the federal government, and the Wyoming drafters acted accordingly.

*Id.* at 484. Therefore, in terms of the factors used in a *Gunwall* analysis, *Vasquez* held

his claim that the search and seizure violated the Wyoming Constitution.

that the text of Art. 1, § 4 did not indicate increased protection; any difference between Art. 1, § 4 and the Fourth Amendment "demonstrates little." *Id.* at 484. Wyoming does not have any helpful constitutional history, *id.* at 484, and any structural differences between the state and federal constitutions as a whole "do not assist us one way or another in our determination." *Id.* at 485. "Having decided that the Wyoming Constitution's declaration that people 'be secure in their persons, houses, papers and effects against unreasonable searches and seizures' requires an independent interpretation regardless of its similarities to or differences from the Federal Constitution," *Vasquez* examined preexisting state law and matters of particular state or local concern.[8] *Id.* at 485.

At this point, our reliance on *Vasquez* ends. The remaining analysis concerns preexisting state law and matters of particular state or local concern in the particular circumstances of the case. *Vasquez* involved the search and seizure of the passenger compartment of a vehicle incident to a lawful arrest; therefore, the analysis considered both our vehicle search and search incident to arrest jurisprudence. *Vasquez*, at 487–89. In contrast, this case involves state law concerning the interception of communications for use in criminal proceedings.

"Previously established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights." *Gunwall*, 720 P.2d at 812. Our early decisions remind us that this constitutional provision was not idle ceremony, but the cornerstone of all state constitutions. *Vasquez*, at 486. The provision is meant to restrain the legislature from enacting statutes which allow unreasonable searches and seizures. *Id.* (citing *State v. Peterson*, 27 Wyo. 185, 198, 194 P. 342, 345 (1920)). It also fell "upon the judiciary to denounce as unlawful any unreasonable search and seizure." *Id.* Our next few ventures into search and seizure jurisprudence "issued from a

standard of review that only unreasonable searches are forbidden, and whether or not a search is reasonable is a question of law to be decided from all the circumstances of a case whether the search was with or without a warrant." *Id.* (citing *State v. George*, 32 Wyo. 223, 231 P. 683 (1924); *State v. Crump*, 35 Wyo. 41, 246 P. 241 (1926)).

Thus, we must consider whether our interpretation of Wyo.Stat.Ann. § 7–3–602(b)(iv), allowing warrantless interception of communications as long as one of the parties consents, passes muster under our state constitution. That is, does it violate a reasonable expectation of privacy and if so, was it unreasonable? Like Congress, the Wyoming legislature has drawn a distinction between nonconsensual electronic surveillance and "participant monitoring" in its communication interception legislation. *See Collins*, 475 N.W.2d at 688; Wyo.Stat.Ann. §§ 7–3–602(b)(iv) and (v), –605, –606 (LEXIS 1999). Although we are not bound by the Fourth Amendment decisions of the United States Supreme Court in this case, we may certainly follow its lead when we find its reasoning persuasive.

The Supreme Court has held that "participant monitoring" does not violate the Fourth Amendment. *United States v. White*, 401 U.S. 745, 752–53, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971). Although it was a plurality decision, Justice White opined in dicta that those who engage in criminal activity assume the risk that their confederates will later disclose their participation to law enforcement, and having been burdened with that risk, must also assume the risk of simultaneous disclosure. *Id.* A large majority of our sister states have held that the accused assumes the risk of disclosure by engaging in criminal activity with another, forfeiting the reasonable expectation of privacy which might otherwise sustain a constitutional challenge to the evidence. *See Collins*, 475 N.W.2d at 696 n. 48 (compiling cases).[9]

---

8. This is not an attempt to limit the factors which may be relevant to a state constitutional analysis. Rather, we are simply limiting our discussion to the factors discussed in the *Vasquez* and *Almada* briefs. *See Saldana*, 846 P.2d at 622 (Golden, J.,

concurring) (The factors are "a list of useful 'non-exclusive neutral criteria.' ").

9. *Collins* acknowledged other practical considerations weigh heavily against the imposition of a constitutional warrant requirement for partici-

Unable to improve on the rationale in *Collins*, we reiterate it here:

> Benjamin Franklin once cautioned that "[i]f you would keep your secret from an enemy, tell it not to a friend." What a confidant who hears it chooses to do with a secret—whether he whispers it, records it, or broadcasts it—is beyond the control of the teller. We reject the notion that a wrongdoer has a constitutionally protected expectation that his confidant will be unable to repeat with accuracy and credibility the communicated secret. We agree with Justice White that courts should not be "too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable."

*Collins*, 475 N.W.2d at 698 (quoting *White*, 401 U.S. at 753, 91 S.Ct. at 1126).

Recognizing that both the Wyoming and United States Constitutions guarantee freedom from unreasonable searches and seizures when an individual's legitimate expectation of privacy is invaded, *Saldana* held:

> The courts have drawn a balance between the interest of the state in protecting its citizens from the criminal conduct of others and its interest in preserving the freedom of the individual from overly intrusive governmental invasion. Consequently, the rule has developed that any search, assuming first that it does invade a subjective and legitimate expectation of privacy sufficient to invoke the constitutional protections, must be unreasonable in order to be impermissible.

*Saldana*, 846 P.2d at 610 (citing *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *King v. State*, 780 P.2d 943 (Wyo.1989); *Jessee v. State*, 640 P.2d 56, *reh'g denied*, 643 P.2d 681 (Wyo.1982); *Neilson v. State*, 599 P.2d 1326 (Wyo.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *State v. George*, 32 Wyo. 223, 231 P. 683 (1924)).

Because statutory law may also bear on whether the state constitution grants distinctive rights, we now consider Wyoming's Communication Interception Act, Wyo.Stat. Ann. § 7–3–601 et seq. (LEXIS 1999). *See Gunwall* 720 P.2d at 812. The Act clearly recognizes the potential for, and protects against, unconstitutional interception of communications. Specifically, the Act protects against violation of our citizens' right not to be subjected to unreasonable searches and seizures by couching its language in terms familiar to Wyoming's search and seizure jurisprudence. For example, Wyo.Stat.Ann. § 7–3–602(a)(i) (LEXIS 1999) prohibits the interception of any oral communication. An "oral communication" is defined as "any oral communication uttered by a person who **reasonably** expects and circumstances justify the expectation that the communication is not subject to interception...." Wyo.Stat.Ann.

---

pant monitoring. *See Collins*, 475 N.W.2d at 696–98 (citing *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511, (1975)), *overruled by Collins*. Even *Beavers* conceded that participant monitoring is practiced extensively throughout the country and represents a vitally important investigative tool for law enforcement. *Collins*, 475 N.W.2d at 696. In her *Beavers* dissent, Chief Justice Coleman noted the particular need for warrantless participant monitoring in drug-related investigations because the police "are charged with risking their own lives to find and arrest the 'purveyors of death.'" *Collins*, 475 N.W.2d at 697. The inherent necessity for privacy in drug sales and the small amount of the product present the police with "a uniquely difficult task." *Id.* "Participant monitoring often serves 'to protect the life of the agent or informant. He plays a deadly game and the microphone allows him speedy access to help.'" *Id.* at 698. In *Common-*

*wealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987), Justice Kelly, concurring in part and dissenting in part, opined "it is often necessary for the police to resort to the use of informants of dubious character, reliability, and credibility.... Without tools such as participant monitoring to corroborate the disclosures of such informants, reasonable suspicions might never be developed into probable cause, lawful arrest, and just conviction." *Collins*, 475 N.W.2d at 697. "Society seeks to foster truth, not to suppress it.... If the defendant speaks innocently, his own words will exculpate him. However, if he implicates himself, the recordings prevent him from denying his participation in the conversation. Surely, society would not consider reasonable an expectation of privacy which would result in a more inaccurate version of the events in question." *Id.* at 698 (quoting *State v. Reeves*, 427 So.2d 403, 418 (La.1982)).

§ 7–3–601(a)(vii) (LEXIS 1999) (emphasis added).

In addition, if the communication is intercepted pursuant to Wyo.Stat.Ann. § 7–3–602(b)(v), the Act requires peace officers to obtain a court order permitting the interception. Wyo.Stat.Ann. § 7–3–602(b)(v) (LEXIS 1999), *and see* Wyo.Stat.Ann. §§ 7–3–605 and –606 [10] (LEXIS 1999). Peace officers must follow stringent procedures clearly meant to protect against unreasonable searches and seizures. The required procedures include: (1) written application for the order, upon oath or affirmation to a judge; (2) a full and complete statement of facts to support issuance of the order; (3) the judge's determination that the facts submitted support a finding of probable cause; and (4) the evidence derived from the interception may only be disclosed or used if it relates to an offense specified in the order permitting the interception or the agency executing the order must apply for an extension of the order. *See* Wyo.Stat.Ann. § 7–3–606(a), (c), and (r) (LEXIS 1999). Finally, the Act forbids the admission of any communication intercepted in violation of the Act as evidence in any trial, hearing or other proceeding, thereby invoking our constitutional remedy, suppression of evidence, if it is obtained in violation of the statute. Wyo.Stat.Ann. § 7–3–606(p) (LEXIS 1999).

The comprehensive nature of the Act and its many safeguards couched in constitutional terms suggest that compliance with the Act weighs heavily in favor of finding the interception constitutional on independent state grounds. The significant limitations placed on the interception of communications by peace officers clearly signifies a legislative intent to draw a balance between the interest of the state in protecting its citizens from crime and its interest in preserving individual freedom from overly intrusive governmental invasion. *See Saldana*, 846 P.2d at 610.

We hold participant monitoring without a warrant or court order pursuant to the Act does not violate Art. 1, § 4 of the Wyoming Constitution. Almada had no reasonable expectation of privacy which might implicate constitutional protection in this case.

## IV. Motion to Suppress Search Evidence

Almada filed a motion to suppress the evidence obtained during the June 4, 1996, search of his residence, alleging that the search warrant issued was defective because it was based on a law enforcement affidavit which was not based on personal knowledge, contained material inaccuracies and untruths, and was not reviewed by a neutral and detached magistrate. On appeal, he contends the district court erred in denying his motion to suppress because probable cause did not support the issuance of a search warrant.

The district court's factual findings concerning a motion to suppress evidence will not be disturbed on appeal unless the findings are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Because the district court holds the hearing on the matter and has the opportunity to assess the credibility of witnesses, weigh the evidence and make the necessary inferences and conclusions, we view the evidence in the light most favorable to the district court's determination. *Id.* However, the reasonableness of the particular search or seizure, and therefore the constitutionality of the same, remain a question of law, which we review *de novo*. *Southworth v. State*, 913 P.2d 444, 447 (Wyo. 1996).

The record simply does not support Almada's allegations. During the motions hearing Almada focused his evidentiary questioning and argument on his assertions that the affiant did not articulate any faith in the reliability of the informants upon which he relied and that the affidavit contained facts which were not true. The district court found that the testimony presented at the hearing and the affidavit submitted in support of the warrant provided substantial evidence indicating the warrant was issued upon probable cause and denied the motion to suppress.

10. Wyo.Stat.Ann. §§ 7–3–605 and –606 are attached in an appendix. Wyo.Stat.Ann. § 7–3–606 (LEXIS 1999) is extremely detailed and comprehensive in its protection of those whose conversations may be subject to interception by law enforcement without the consent of one of the parties. Indeed, the length of the statute precludes its inclusion in the text of this opinion.

Review of the affidavit reveals that it specifically describes a series of surveilled drug transactions. Most of the representations made by the informants were confirmed by the personal knowledge of at least one of the officers involved in the case. It is also clear from the testimony of the agent who signed the affidavit that he relied in good faith on the informant's statement that Almada threatened one of his buyers with a gun. The informant told the officer Almada held a gun to the buyer's head, but the agent later learned Almada was using a pointed finger, not a gun. An aggrieved defendant must show that, absent the false statements, the affidavit is insufficient. *Guerra v. State*, 897 P.2d 447, 457 (Wyo.1995). Testimony was undisputed that Almada threatened to kill his buyers if he got caught. Officer protection was clearly a valid concern in this matter and the statement concerning the gun was presented to justify eliminating the knock and announce rule. The affidavit was sufficient to support a finding of probable cause. The search warrant in this case was properly issued, and the district court properly denied Almada's motion to suppress the evidence gathered as a result of the search.

## CONCLUSION

The orders denying Almada's motions to suppress wiretap and search evidence, motion to dismiss for speedy trial violations, and his motion to remand for a meaningful preliminary hearing are affirmed in all respects.

## Appendix

Wyo.Stat.Ann. § 7-3-605 (LEXIS 1999) provides:

(a) The governor, the attorney general or the district attorney within whose jurisdiction the order is sought in conjunction with the attorney general, may authorize an application to a judge of competent jurisdiction for an order authorizing the interception of wire, oral or electronic communications by the Wyoming division of criminal investigation or any law enforcement agency of the state having responsibility for investigation of the offense for which the application is made, if the interception may provide evidence of an attempt to commit, conspiracy to commit, solicitation to commit or the commission of any of the following felony offenses or comparable crimes in any other jurisdiction:

(i) Violations of the Wyoming Controlled Substances Act of 1971;

(ii) Any of the following, if incident to or discovered during investigation of a violation of the Wyoming Controlled Substances Act of 1971:

(A) Murder as defined in W.S. 6-2-101 and 6-2-104;

(B) Kidnapping or related felony offense as defined in W.S. 6-2-201, 6-2-202 and 6-2-204;

(C) First or second degree sexual assault as defined in W.S. 6-2-302 and 6-2-303;

(D) Robbery as defined in W.S. 6-2-401;

(E) Blackmail as defined in W.S. 6-2-402;

(F) Burglary as defined by W.S. 6-3-301; or

(G) Felony larceny or related felony offense defined in W.S. 6-3-401 through 6-3-410.

Wyo.Stat.Ann. § 7-3-606 (LEXIS 1999) provides:

(a) Each authorized application for an order permitting the interception of wire, oral or electronic communications shall be made in writing upon oath or affirmation to a judge and shall state the applicant's authority under W.S. 7-3-605(a) to make the application. Each application shall include the following information:

(i) The identity of the peace officer;

(ii) A full and complete statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued, including:

(A) Specific facts concerning the particular offense that is being investigated;

(B) A particular description of the nature and location of the equipment from which, or the place where, the communication is to be intercepted;

(C) A particular description of the type of communication sought to be intercepted;

(D) The identity of the person or persons, if known, who are suspected of committing the offense and whose communications are to be intercepted.

(iii) A complete statement as to whether or not other investigative procedures have been tried and have failed, or why they reasonably appear to be unlikely to succeed or would be too dangerous;

(iv) A statement of the required duration of the interception. If the nature of the investigation will require that the interception not automatically terminate when the described type of communication has been first obtained, the application shall state facts sufficient to establish probable cause to believe that additional communications of the same type will occur after the initial interception;

(v) A full and complete statement by the applicant concerning all previous applications known to have been made to any judge:

(A) For permission to intercept wire, oral or electronic communications involving any of the same persons, equipment or places specified in the application; and

(B) Action taken by the judges on each previous application.

(vi) If the application is for extension of an order, a complete statement shall be made setting forth the results thus far obtained from the interception or a reasonable explanation of the failure to obtain any results.

(b) The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application.

(c) Upon an application, the judge may issue an ex parte order, as requested or modified, permitting interception of wire, oral or electronic communications within the territorial jurisdiction of the court in which the judge is sitting, and outside that jurisdiction but within the state of Wyoming in the case of a mobile interception device authorized by a district court within such district, if the judge determines on the basis of the facts submitted by the applicant that:

(i) There is probable cause for belief that the named person is committing or has committed any of the offenses enumerated in W.S. 7-3-605;

(ii) There is probable cause for belief that particular communications concerning those offenses will be intercepted;

(iii) Normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed or would be too dangerous;

(iv) There is probable cause for belief that the equipment from which, or the place where, the wire, oral or electronic communications are to be intercepted is or is about to be used in connection with any of the offenses enumerated in W.S. 7-3-605 or is leased to, listed in the name of or used by the person suspected in the commission of any enumerated offense.

(d) Each order permitting interception of wire, oral or electronic communications shall specify:

(i) The nature and location of the person or persons, if known, whose communications are to be intercepted;

(ii) The nature and location of the communications equipment or place where the interception is to occur;

(iii) A particular description of the type of communication sought to be intercepted and a statement of the particular offense or offenses to which it relates;

(iv) The period of time during which an interception is authorized including a statement as to whether or not the interception shall automatically terminate when the described communication is first obtained;

(v) The identity of the agency authorized to intercept the communications and of the person authorizing the application.

(e) No order entered under this section may permit the interception of any wire, oral or electronic communication for any period longer than is necessary to achieve the objective of the authorization, or in any event longer than thirty (30) days. The thirty (30) day period provided by this subsection begins on the earlier of the day on which the peace officer first begins to conduct an interception under the order or ten (10) days after the order is entered.

(f) Extensions of an order may be granted upon an application for extension made in accordance with subsection (a) of this section and upon the findings required by subsection (c) of this section. The period of the extension shall be no longer than necessary to achieve the objective of the extension and in any event no longer than thirty (30) days.

(g) Every order and extension thereof shall contain a provision that the permission to intercept shall be executed as soon as practicable, and that the execution of the permission shall be conducted in such a way as to minimize the interception. Every order or extension thereof shall also provide that the interception terminate upon attainment of the objective, or in any event in thirty (30) days.

(h) The order or extension permitting interception may require reports to be made to the judge issuing the order, stating the progress which has been made toward achievement of the authorized objective and the need for continued interception.

(j) The contents of any wire, oral or electronic communication intercepted shall, if possible, be recorded on tape, wire or other comparable device. The recording shall be performed to protect it from editing or other alterations. Immediately upon expiration of the period of the order, or extension thereof, the recording shall be submitted to the judge issuing the order and shall be sealed under his directions. A recording shall not be destroyed except upon an order of the judge, and in any event shall be kept for five (5) years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of this section. The presence of the seal provided for by this subsection, or a satisfactory explanation for its absence, is a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom.

(k) Applications made and orders granted under this section shall be sealed by the judge. Custody of the sealed applications and orders shall be maintained at the direction of the judge. The applications and orders shall be disclosed only upon a showing of good cause before a judge and shall not be destroyed except upon order of the judge to whom the application was presented, and in any event shall be kept for five (5) years. Any information obtained pursuant to a court order permitting interception of wire or oral communications shall not be used, published or divulged except in accordance with the provisions of this act.

(m) Within a reasonable time, but not later than ninety (90) days after the denial of an application or the termination of the period of an order authorizing interception or extension thereof, the judge shall cause to be served upon each person named in the application and any other person the judge determines as in the interest of justice, notice of the following:

(i) That an order or application has been entered under this section;

(ii) The date of the entry and the period of permitted interception or the denial of the application; and

(iii) Whether wire, oral or electronic communications were or were not intercepted.

(n) The judge, upon the filing of a motion, may, in his discretion, make available to the person or his counsel for inspection any portion of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge, the service of the matter required by subsection (m) of this section may be postponed.

(o) The contents of any wire, oral or electronic communication intercepted pur-

suant to this section or evidence derived from that communication shall not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding unless the party offering the evidence, not less than twenty (20) days before the trial, hearing or proceeding, gives notice to the court or hearing officer and all other parties. The court may then order disclosure of the court order and accompanying application. If the order of interception and accompanying application has previously been disclosed, the offering party may furnish all other parties with the order of interception and accompanying application without further order of the court or hearing officer upon proper notice. This twenty (20) day period may be waived by the court or hearing officer if it finds that it was not possible to furnish the party with the information twenty (20) days before the trial, hearing or proceeding and that no party will be prejudiced by the delay in receiving the information.

(p) The contents of any intercepted wire, oral or electronic communication or evidence derived therefrom shall not be admitted as evidence in any trial, hearing or other proceeding in this state unless the interception was performed in accordance with this act.

(q) No otherwise privileged wire, oral or electronic communication intercepted shall lose its privileged character, unless the communications are in furtherance of a criminal or tortious act in violation of the laws of the United States or this state.

(r) When a peace officer, while engaged in intercepting wire, oral or electronic communications relating to an offense specified in the order permitting interception, intercepts wire, oral or electronic communications relating to an offense other than those specified in the order, the contents thereof, and evidence derived therefrom, may be disclosed or used only if the offense constitutes a felony under the laws of the United States or this state. If the communication concerns an enumerated offense listed in W.S. 7-3-605, the agency executing the order of interception shall

apply to the issuing court for an expansion of the order of interception pursuant to paragraph (a)(ii) of this section. The application shall be made as soon as practicable.

(s) In the event an intercepted communication is in a code or a foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, any minimization required under this section shall be accomplished as soon as practicable after the interception.