2003 WY 128

**Dale William DEAN, Sr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 02–176.**

Supreme Court of Wyoming.

Oct. 10, 2003.

Representing Appellant: Kenneth M. Koski, Public Defender; Donna D. Domonkos; Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dee Morgan, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1] Appellant was convicted of one count of kidnapping, one count of first-degree sexual assault, and two counts of third-degree sexual assault. This appeal raises issues of the failure to give lesser-included offense instructions, sufficiency of the evidence, and speedy trial. Finding no error, we affirm.

## ISSUES

1. Did the trial court err in refusing to instruct the jury that false imprisonment is a lesser-included offense of kidnapping?

2. Did the trial court err in refusing to instruct the jury that sexual battery is a lesser-included offense of both first-degree and third-degree sexual assault?

3. Was the evidence sufficient to convict appellant of each charge?

4. Was appellant denied his right to a speedy trial pursuant to W.R.Cr.P. 48 when the trial was not held within 120 days after the date of arraignment?

## FACTS

[¶ 2] On July 21, 2001, Dale W. Dean, Sr. (appellant) abducted M.R. (the victim) at gunpoint as she walked along a street in Gillette. Appellant placed the victim in handcuffs and forced her, face down, into his van. Thereafter and throughout the ordeal, the victim was in fear for her life.

[¶ 3] Appellant drove west out of Campbell County into Johnson County on Interstate 90. At one point, in an attempt to determine where she was being taken, the victim told appellant she needed to go to the bathroom. Appellant pulled off to the side of the highway and removed the handcuffs from the victim. He got out of the van with her, tucking the gun into the back of his pants. He stood near the van watching her, and then ordered her into the front seat. Appellant placed the gun by the driver's seat, placed the handcuffs on the gearshift, locked the doors, and started driving again.

[¶ 4] About twelve or thirteen miles outside of Buffalo, in Johnson County, appellant pulled into a truck pull-out area. Hoping to get help from someone in the parking area, the victim asked to go for a walk. Appellant let her out of the van, but followed her as she walked, again with the gun tucked into the back of his pants. They both then returned to the van. The victim asked if she could go to the bathroom again. Appellant let her out, but again watched her from outside the van, with the gun in his waistband. As the victim returned to the passenger seat, appel-

lant got into the van's middle seat and ordered the victim to join him. When she did not comply, he threatened to use the gun and handcuffs. In fear for her life, the victim then complied.

[¶ 5] While appellant and the victim sat in the middle seat, some cars drove past the parking area. Each time a car went by, appellant picked up the gun, which "made a clicking noise." Appellant then ordered the victim to get in the back seat. She obeyed and he followed, taking the gun with him. He took off his shirt and ordered the victim to do the same. When she did not comply, he took her shirt off. He told her she had "nice breasts" and said, "God, I want to fuck you." He touched and put his mouth on her breasts. He removed her shorts and underpants, made her lie down on the back seat, and then performed oral sex on her and put his fingers inside her vagina. He then pulled his pants down and told her to "jack him off." Appellant had the victim sit up and he placed her hand on his penis. When he could not reach a climax, he forced her to perform oral sex on him. Still unable to obtain a climax, he pulled a bottle of lubricant from a bag and had the victim masturbate him until he climaxed. He used his tee-shirt to clean himself off and gave the tee-shirt to the victim to do the same.

[¶ 6] Appellant pulled up his pants and returned to the driver's seat, taking the gun with him. The victim remained in the back seat, where she put her clothes back on. She then got into the front seat at appellant's command. Appellant then indicated that he wanted to get something for breakfast, started the van, and headed into Buffalo.

[¶ 7] In another attempt to get help, the victim once again asked to be allowed to go to the bathroom. Appellant pulled up to a convenience store, but he followed her inside, taking the gun with him, so she could not ask for help. She used the restroom and returned to the van with appellant. They drove to another convenience store, where appellant parked the van so he could see the victim while he went inside and talked to the cashier. The victim did not run because appellant was watching her and she was afraid he would kill her.

[¶ 8] After appellant returned to the van, they next drove to a restaurant. Appellant allowed the victim to go in first and, while he was still outside, she immediately approached a waitress and asked her to call the police because appellant had taken her from Gillette. Appellant and the victim were sitting at a table when the police arrived. As the officers approached the table, the victim quickly arose and grabbed one officer's arm, telling him appellant had taken her from Gillette. One officer then spoke with the victim while another spoke with appellant. Appellant admitted having sex with the victim, but claimed it was consensual.

[¶ 9] The victim was very upset while she spoke with the officer. She told the officer she had been handcuffed, and he noticed a red mark on one of her wrists. After obtaining consent from appellant to search the van, the officers found a silver pellet pistol that looked like a Colt .45 under the driver's seat and handcuffs on the gearshift. Appellant was arrested.

[¶ 10] A criminal information was filed on July 23, 2001, charging appellant with kidnapping, first-degree sexual assault, and two counts of third-degree sexual assault. Appellant waived his right to a preliminary hearing on August 3, 2001, and he was bound over to district court for trial. On August 21, 2001, he filed a demand for speedy trial. He was arraigned on September 11, 2001, at which time the district court entered appellant's not guilty pleas and set the matter for trial on February 19, 2002. The trial was held as scheduled. The jury returned verdicts of guilty on all four counts.

## DISCUSSION

*Did the trial court err in refusing to instruct the jury that false imprisonment is a lesser-included offense of kidnapping?*

[¶ 11] Appellant asked the trial court to instruct the jury that false imprisonment is a lesser-included offense of kidnapping. The rule concerning the giving of a lesser-included offense instruction was developed at common law to assist the prosecution where it was unable to prove some element

of the charged crime, but the defendant also has a right to the benefits of the rule because it allows the jury an option between the drastic alternatives of conviction of the greater offense and acquittal. *Keller v. State*, 771 P.2d 379, 383 (Wyo.1989); *State v. Selig*, 635 P.2d 786, 790 (Wyo.1981). Where a lesser-included offense instruction has been proffered and an objection has been lodged to its rejection, the refusal to give the instruction is subject to *de novo* review in this Court. *Houghton v. State*, 6 P.3d 643, 646 (Wyo. 2000) (*citing Paramo v. State*, 896 P.2d 1342, 1344 (Wyo.1995)). The failure to give a lesser-included offense instruction when such is appropriate is reversible error. *Houghton*, 6 P.3d at 646.

[¶ 12] W.R.Cr.P. 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." A lesser-included offense has been described as one that is necessarily established by proof of the greater offense, or, stated differently, it is such that the greater offense cannot be committed without also committing the lesser offense. *Evanson v. State*, 546 P.2d 412, 416 (Wyo.1976), *rev'd on other grounds by Brown v. State*, 590 P.2d 1312 (Wyo.1979). Alternatively, a lesser-included offense has been characterized as occurring when all of the elements within the claimed lesser offense are found in the greater offense. *Balsley v. State*, 668 P.2d 1324, 1328 (Wyo.1983). The question of the existence of a lesser-included offense is a question of law subject to *de novo* review in this Court. *Sindelar v. State*, 932 P.2d 730, 732 (Wyo. 1997).

[¶ 13] We have said that a lesser-included offense instruction should be given where the following criteria have been met:
"With specific regard for lesser-included offense instructions, we recently held that a trial court must first determine if all the elements of the lesser offense are included within the greater. If that is the case and there is some evidence that would rationally permit the jury to find the accused guilty of the lesser and not the greater

offense, the instruction should be given. *Sanders v. State,* 7 P.3d 891, 894 (Wyo. 2000).... The test is more fully expressed in this five-step analytic process: (1) a proper request for the instruction is made; (2) the elements of the lesser-included offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser-included offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) mutuality exists such that the lesser-included charge can be demanded by either the prosecution or the defense. When all five parts of this test are met, and the lesser-included offense instruction is not given, the trial court commits reversible error. *Eatherton v. State,* 761 P.2d 91, 94–95 (Wyo.1988)."

*Allen v. State,* 2002 WY 48, ¶ 53, 43 P.3d 551, 568–69 (Wyo.), *cert. denied,* 537 U.S. 899, 123 S.Ct. 201, 154 L.Ed.2d 170 (2002) (*quoting Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155–56 (Wyo.2001)). In deciding whether to give a lesser-included offense instruction, "the court should view the evidence in the light most favorable to the accused." *Keller,* 771 P.2d at 385.

■ [¶ 14] In *State v. Keffer,* 860 P.2d 1118, 1126–31 (Wyo.1993), we traced Wyoming's precedent on the issue of lesser-included offenses and related it to the development of similar precedent in other jurisdictions. In doing so, we noted a lack of "clear consistency" in this Court's application of a standard, and we alluded to the "unsettled nature" of Wyoming's lesser-included offense jurisprudence. *Id.* Finally, we adopted the federal *Blockburger* test, otherwise known as the statutory elements test, for determining whether a lesser-included offense instruction should be given:

" 'Under this test, one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under [Wyoming Rule 31(c)].' "

*Keffer,* 860 P.2d at 1134 (*quoting Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)).[1]

[¶ 15] In adopting the statutory elements test, we emphasized the "certainty and predictability" that should follow: " 'Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly.' " *Keffer,* 860 P.2d at 1133 (*quoting Schmuck,* 489 U.S. at 720, 109 S.Ct. 1443). We recognized, however, that a process for identifying when a lesser-included offense instruction should be given was still needed and that the first step in that process should be a request for such instructions by the parties. *Keffer,* 860 P.2d at 1134.

[¶ 16] There are competing theories as to how, once a request has been made by a party, the decision should be made whether to give the lesser-included offense instruction. The "jury function theory" holds that, if the lesser crime is necessarily included in the greater, the jury should be allowed to weigh the evidence and determine guilt as to either offense. *Id.* The "court function theory" emphasizes the third and fourth elements from the five-part test cited above, requires the court to evaluate the evidence, and prevents the giving of a lesser-included offense instruction unless a fact question is present regarding one of the elements that differentiate the two crimes. *Id.* In *Keffer,* we determined that the jury function theory, but not

1. The *Blockburger* test, originally meant for double jeopardy analysis, provided as follows:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

the court function theory, was consistent with the statutory elements test and that the judge's role should be limited to giving the lesser-included offense instruction "if there are in dispute factual issues that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater." *Id.* at 1136. The quantum of evidence necessary to meet this standard "ought to be perceived as minimal." *Id.* at 1135.

[¶ 17] Unfortunately, the lack of clear consistency in our cases survived *Keffer.* In *Keffer,* Justice Thomas made a pointed effort to discontinue use of the five-part test recited above:

> This evidence permitting standard was a part of Wyoming's former cognate standard. In *Selig,* this court indicated that the five [*United States v.*] *Chapman*[, 615 F.2d 1294 (10th Cir.1980), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980)] elements provided "guidelines from which a determination can be made as to whether or not the evidence would permit the jury rationally to find the defendant guilty of the lesser offense but not guilty of the greater * * *." *Selig,* 635 P.2d at 790. Although we shall no longer use the five *Chapman* elements and specifically disavow the former role of the trial judge in weighing the evidence, we adhere to the view that the giving of a lesser included offense instruction is appropriate if there are in dispute factual issues that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater.

*Keffer,* 860 P.2d at 1136. *Keffer* was supposed to be a jurisprudential watershed:

> Our adoption of the statutory elements test for identifying lesser included offenses directs that the logically consistent jury function theory replace the evidence evaluation we formerly required of trial judges.

*Id.* at 1134.

[¶ 18] Despite this stated intention, the lesser-included offense opinions issued by this Court since *Keffer* reveal a continued recognition of the need for the trial judge to make evidentiary determinations in deciding whether "there are in dispute factual issues

that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater." *Id.* at 1136. *See, for example, Paramo,* 896 P.2d at 1344 (failure to give lesser-included offense instruction is reversible error if the evidence supports it); *Nava v. State,* 904 P.2d 364, 367–68 (Wyo.1995) (not error not to give lesser-included offense instruction where the evidence of guilt of the greater offense is overwhelming); *Bloomquist v. State,* 914 P.2d 812, 822 (Wyo.1996) (judge would have refused a lesser-included offense instruction because of overwhelming evidence of guilt of the charged crime); *Sindelar,* 932 P.2d at 732 (reversible error results from failure to give a lesser-included offense instruction where the evidence presented would support conviction of lesser offense); *Hermreck v. State,* 956 P.2d 335, 339 (Wyo.1998) (not error to refuse lesser-included offense instruction where there was no evidence to support it); *Carey v. State,* 984 P.2d 1098, 1101–02 (Wyo.1999) (there must be competent evidence to support a lesser-included offense instruction); *Wolfe v. State,* 998 P.2d 385, 388 (Wyo.2000) (there must be some evidence to support a lesser-included offense instruction); *Houghton,* 6 P.3d at 646–47 (the evidence was such that the jury could have convicted of the lesser-included offense); and *Sanders v. State,* 7 P.3d 891, 894–95 (Wyo.), *cert. denied,* 531 U.S. 1024, 121 S.Ct. 594, 148 L.Ed.2d 508 (2000) (no evidence to support a lesser-included offense instruction). In the context of these post-*Keffer* opinions, all of which recognize the trial court's duty to determine the presence of some level of supportive evidence before a lesser-included offense instruction is given, it is perhaps not surprising that we continue to revert to the five-part test purportedly abandoned in *Keffer. See Thomas v. State,* 2003 WY 53, ¶ 11, 67 P.3d 1199, 1202 (Wyo.2003); *Allen,* 2002 WY 48, ¶ 53, 43 P.3d at 568–69; and *Mueller,* 2001 WY 134, ¶ 9, 36 P.3d at 1156.

■ [¶ 19] The parties in the instant appeal have not chosen to comment upon this apparent precedential inconsistency. Instead, they have each presented their respective cases as being "obvious." Consequently, we will not take this issue beyond this point.

Suffice it to say that, under any standard or test, a lesser-included offense instruction is not to be given in the absence of some minimal evidentiary support and that, after determining that the statutory elements test has been met, the trial court is obligated also to determine whether a lesser-included offense instruction is supported by the evidence.

[¶ 20] The crime of kidnapping is found at Wyo. Stat. Ann. § 6–2–201 (LexisNexis 2003).[2] The elements of the crime of kidnapping, as contained in the instruction given to the jury in this case, which instruction appears to have been based on Wyoming Criminal Pattern Jury Instruction No. 22.01B, and to which there was no objection, are as follows:

1. On or about July 21–22, 2001
2. In Johnson County, Wyoming
3. The Defendant, Dale William Dean, Sr.
4. Unlawfully confined [the victim]
5. With the intent to facilitate the commission of sexual assault in the first degree or sexual assault in the third degree.[3]

[¶ 21] The crime of false imprisonment is found at Wyo. Stat. Ann. § 6–2–203 (LexisNexis 2003).[4] Appellant offered two instructions in regard to false imprisonment that were refused by the trial court. The first, based on Wyoming Criminal Pattern Jury Instruction No. 1.08 reads as follows:

If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged, if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

The offense of Sexual Assault in the First Degree, with which the defendant is charged, also includes the lesser offense of Sexual Battery, and

The offense of Sexual Assault in the Third Degree, with which the defendant is charged, also includes the lesser offense of Sexual Battery, and

The offense of Kidnapping, with which the defendant is charged, also includes the lesser offense of False Imprisonment.

[¶ 22] The second refused jury instruction, a proposed elements instruction based on Wyoming Criminal Pattern Jury Instruction No. 22.03, identified the elements of false imprisonment as follows:

1. On or about July 22, 2001
2. In Johnson County, Wyoming
3. The defendant, Dale Dean, Sr.
4. Knowingly and unlawfully
5. Restrained [the victim] and
6. That restraint substantially interfered with the liberty of [the victim].

[¶ 23] These two instructions were proposed and rejected during a formal instruction conference toward the end of the trial. The trial court utilized the above-described five-step test in analyzing the jury instructions and concluded (1) that the elements of false imprisonment are not a subset of the elements of kidnapping, (2) that the evidence would not justify conviction of the lesser but acquittal of the greater offense, and (3) that proof of the elements distinguishing the two

---

**2.** Wyo. Stat. Ann. § 6–2–201 states, in pertinent part:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:

(i) Hold for ransom or reward, or as a shield or hostage;

(ii) Facilitate the commission of a felony; or

(iii) Inflict bodily injury on or to terrorize the victim or another.

(b) A removal or confinement is unlawful if it is accomplished:

(i) By force, threat or deception; or

(ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen (14) or who is adjudicated incompetent.

**3.** We have not been asked to determine the propriety of the alternative allegation in the final element.

**4.** Wyo. Stat. Ann. § 6–2–203(a) states: "A person is guilty of false imprisonment if he knowingly and unlawfully restrains another so as to interfere substantially with his liberty."

offenses was not sufficiently in dispute. The trial court specifically relied upon *Carey v. State,* 715 P.2d 244, 249 (Wyo.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986), in stating that a lesser-included offense instruction should not be given where consent is the only defense and only two alternatives are available to the jury—guilty of the greater offense or not guilty.[5]

[¶ 24]   The issue of whether false imprisonment is a lesser-included offense of kidnapping is a question of first impression for this Court.   In *Doud v. State,* 845 P.2d 402, 405–07 (Wyo.1993), we compared the two crimes, but we did not address the specific issue of whether false imprisonment is a lesser-included offense of kidnapping. Although we referred to false imprisonment as a "lesser offense," we did not deal directly with the fact that the jury in *Doud* was instructed that false imprisonment was a lesser-included offense of kidnapping. *Id.* Instead, our focus was on the elements of kidnapping that distinguish it from false imprisonment and felonious restraint.[6]   In that regard, we noted that kidnapping, unlike false imprisonment or felonious restraint, contains the element of confinement with the intent to hold for ransom, to facilitate the commission of a felony, to inflict bodily injury on, or to terrorize the victim. *Id.* at 406.   Of course, saying that one crime contains elements not found in another is not the same as saying that the other crime is a lesser-included offense.

[¶ 25]   During the instruction conference in the trial court, appellant's attorney argued that "one cannot confine a person with the intent to facilitate the commission of a felony without also committing false imprisonment … [s]o the difference between the two crimes, I believe, is the intent to commit a felony."  The State countered that argument by reciting the two statutes and simply arguing that the elements of false imprisonment are not a subset of the elements of kidnapping.   The State also argued that, even if it

were a lesser-included offense, the evidence did not support an acquittal as to kidnapping and a guilty verdict as to false imprisonment.

[¶ 26]   In his appellate brief, appellant argues that *Doud* implies that false imprisonment is a lesser-included offense of kidnapping.   Citing *Keffer,* 860 P.2d at 1135, he also contends that the "jury function approach" requires the giving of a lesser-included offense instruction whenever there is any evidence from which the jury rationally could convict of the lesser offense.   The State responds with the contention that false imprisonment, unlike kidnapping, contains the element of "knowingly," and that, therefore, the elements of false imprisonment are not a subset of the elements of kidnapping.   The State also argues that, even if false imprisonment is a lesser-included offense of kidnapping, a lesser-included offense instruction was not appropriate in this case because, given the sole defense of consent, the jury rationally could not find appellant not guilty of kidnapping but guilty of false imprisonment.

[¶ 27]   Juxtaposition of the two elements instructions quickly reveals that the first three elements of each are identical.   Thereafter, however, the elements of the two crimes are not readily compared.   The easiest observation is the one made in *Doud,* 845 P.2d at 406, that kidnapping, unlike false imprisonment, has an additional specific intent element.   Parsing of the two statutes beyond that observation leads to the conclusion that false imprisonment is a lesser-included offense of kidnapping if (1) the term "confines" in the kidnapping statute incorporates the concept of "restrains another so as to interfere substantially with his liberty" in the false imprisonment statute, and (2) the word "knowingly" in the false imprisonment statute is incorporated into the specific intent element of the kidnapping statute.

---

**5.** Appellant admitted that the victim accompanied him from Gillette to Buffalo and that they had sexual relations, but he contended that such was with the victim's consent.

**6.** Wyo. Stat. Ann. § 6–2–202(a) (LexisNexis 2003) states:

A person is guilty of felonious restraint if he knowingly:

   (i) Restrains another unlawfully in circumstances exposing him to risk of serious bodily injury, or
   (ii) Holds another in a condition of involuntary servitude.

[¶ 28]   Unfortunately, neither party in this appeal has made much effort to pursue this analysis.   Appellant, without citing to authority and without exploring definitions of terms in his appellate brief, simply argues as follows:

It is obvious that false imprisonment is a lesser-included offense of kidnapping, not only because of the analysis provided in *Doud*, but also because of the statutory element test.   Under false imprisonment, a person has to knowingly and unlawfully restrain another so as to interfere substantially with his freedom.   As to the kidnapping charge against Mr. Dean, Mr. Dean had to unlawfully confine another person, with the additional element of confining that person with the intent to facilitate commission of a felony.   Both offenses require the person to do it unlawfully.   False imprisonment requires a person to do it knowingly, and kidnapping requires a person to do it with intent, which inherently includes a "knowingly" element.   To be able to confine someone, you have to first restrain them.   Confining someone obviously substantially interferes with her liberty.   All of the elements of false imprisonment are a subset of the greater offense of kidnapping, i.e. are contained within the offense of kidnapping.

[¶ 29]   The State's analysis is equally assumptive.   Also without citing to authority and without exploring definitions of terms, the State simply concludes that the elements of false imprisonment are not an identical subset of the elements of kidnapping because false imprisonment includes the word "knowingly."   The State makes no attempt to explain why the concept of "knowingly" is not contained in the concept of "with intent."

■ [¶ 30]   We hold that false imprisonment is a lesser-included offense of kidnapping, insofar as statutory elements are concerned.   One authority suggests that, with the exception of Wisconsin, the courts of other states agree with this conclusion. Wade R. Habeeb, Annotation, *False Imprisonment as Included Offense Within Charge of Kidnapping*, 68 A.L.R.3d 828, 828 (1976).   Needless to say, however, statutory variance across the country leaves many cases having little precedential value.   *See, for example, State v. Tschilar*, 200 Ariz. 427, 27 P.3d 331, 340–41 (2001); *Williamson v. State*, 510 So.2d 335, 337–38 (Fla.App.1987), *overruled by State v. Sanborn*, 533 So.2d 1169 (Fla. 1988); *Raysor v. State*, 191 Ga.App. 422, 382 S.E.2d 162, 163 (1989); and *State v. Lancaster*, 137 N.C.App. 37, 527 S.E.2d 61, 66 (2000).

[¶ 31]   One case that does provide some guidance is *State v. Carter*, 232 Kan. 124, 652 P.2d 694 (1982).   The Kansas kidnapping statute defined that offense as " 'the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person' " for certain identified purposes.   *Id.* at 696 (*quoting* K.S.A. 21–3420). "Unlawful restraint" was statutorily defined as " 'knowingly and without legal authority restraining another so as to interfere substantially with his liberty.' "   *Carter*, 652 P.2d at 696 (*quoting* K.S.A. 21–3424(1)).   The Kansas Supreme Court reversed the defendant's kidnapping conviction because the trial court did not instruct the jury that unlawful restraint was a lesser-included offense of kidnapping.   *Carter*, 652 P.2d at 696.   Similarities between the Kansas statutes and Wyoming's statutes include both use of the words "confine" and "restrain," and a specific intent element of kidnapping compared to the mental state of "knowingly" in the lesser offense.

[¶ 32]   To "confine" means to "hold within a location" or to "imprison."   Merriam–Webster's Collegiate Dictionary 242 (10th Ed.1999).   To "restrain" means to "deprive of liberty; *esp:* to place under arrest or restraint...."  *Id.* at 999.   Certainly, these concepts are so similar that it can be said that the act of confining a person (kidnapping) incorporates the act of restraining that person (false imprisonment).   To that extent, the latter crime is a lesser-included offense of the former.

[¶ 33]   As mentioned above, the Kansas Supreme Court also concluded that unlawful restraint is a lesser-included offense of kidnapping despite inclusion of the word "knowingly" in the lesser offense.   *Carter*, 652 P.2d at 696.   In a similar situation, although involving the crimes of burglary and criminal entry, we have reached the same conclusion.

*Keller*, 771 P.2d at 383–85. Keller was charged with burglary under Wyo. Stat. Ann. § 6–3–301(a) (June 1983 Repl.), which provided as follows:

"A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, **with intent to commit larceny or a felony therein.**"

*Keller*, 771 P.2d at 381 (emphasis added). Criminal entry, as found in Wyo. Stat. Ann. § 6–3–302(a) (June 1983 Repl.), provided as follows:

"A person is guilty of criminal entry if, without authority, he **knowingly** enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures."

*Keller*, 771 P.2d at 384 (emphasis added). We held that criminal entry is a lesser-included offense of burglary and we reversed one of Keller's burglary convictions for failure of the district court to so instruct the jury. *Id.* at 385. We reached a similar conclusion in *Eatherton v. State*, 761 P.2d 91, 95 (Wyo.1988), where proof of the specific intent element of burglary was "sufficiently in dispute. . . ." *See also Collins v. State*, 854 P.2d 688, 698–99 (Wyo.1993) and *Mirich v. State*, 593 P.2d 590, 592–93 (Wyo.1979).

[¶ 34] Under the statutory elements test, false imprisonment is a lesser-included offense of kidnapping. Therefore, a lesser-included offense instruction should be given where there is some evidence to support it and the jury rationally could acquit on the kidnapping charge and convict on false imprisonment. *See, for example, Houghton*, 6 P.3d at 647; *Keller*, 771 P.2d at 384–85; *Jahnke v. State*, 692 P.2d 911, 917–22 (Wyo. 1984); and *Selig*, 635 P.2d at 792. The jury instruction should not be given, however, where the facts and the defense are such that the defendant, if guilty at all, is guilty of the greater offense. *See, for example, Sanders,*

7 P.3d at 894 (manslaughter instruction inappropriate in prosecution for first-degree murder where consent of victim is not a defense to the greater crime); *Bloomquist*, 914 P.2d at 822 ("all-or-nothing" defense of proximate cause made lesser-included offense instruction improper in aggravated vehicular homicide prosecution); *Warren v. State*, 835 P.2d 304, 309–10 (Wyo.1992) (instruction that battery is a lesser-included offense of aggravated assault improper where defense is "I didn't do anything"); *Carey*, 715 P.2d at 249 (lesser-included offense instruction not to be given in sexual assault case where only defense is consent, leaving defendant either guilty or not guilty of the greater offense); *Seeley v. State*, 715 P.2d 232, 238–40 (Wyo. 1986) (lesser-included offense instruction not to be given in sexual assault prosecution where only defense is there was no sexual contact); and *Eckert v. State*, 680 P.2d 478, 481 (Wyo.1984) (all-or-nothing defense of self-defense precludes instructing jury that manslaughter is a lesser-included offense of second-degree murder).

[¶ 35] While we disagree with the trial court's conclusion that the elements of false imprisonment are not a subset of the elements of kidnapping, we agree with its conclusion that a lesser-included offense instruction was inappropriate in this particular case. The trial court correctly compared the present facts to those in *Carey*, 715 P.2d at 249, where the sole defense of consent in a sexual assault trial left the jury with but two alternatives—guilty or not guilty of the greater offense.

***Did the trial court err in refusing to instruct the jury that sexual battery is a lesser-included offense of both first-degree and third-degree sexual assault?***

[¶ 36] In addition to kidnapping, appellant was charged with one count of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–302(a)(ii) (LexisNexis 2003) [7] and two counts of third-degree sexual

---

7. As charged in this case, Wyo. Stat. Ann. § 6–2–302(a) provides, in pertinent part:

Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

. . .

(ii) The actor causes submission of the victim by threat of death, serious bodily injury, [or] extreme physical pain . . . and the victim

assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(iii) (LexisNexis 2003).[8] The first-degree sexual assault charge alleged digital penetration of the victim's vagina. The third-degree sexual assault charges alleged, respectively, fondling of the victim's breasts and forced masturbation of appellant. At the instruction conference, defense counsel asked the trial judge to instruct the jury that the crime of sexual battery is a lesser-included offense of both first-degree and third-degree sexual assault.[9] Counsel argued that it was impossible for appellant to have committed the charged crimes without having committed sexual battery, and he identified "the threat and the belief in the threat" as the elements distinguishing the greater offenses from the lesser offense.

[¶ 37] The trial court's rationale for rejecting appellant's proposed sexual battery instruction was identical to its rationale for rejecting the proposed false imprisonment instruction: the elements of the lesser offense were not a subset of the elements of the greater offenses, the evidence would not justify conviction of the lesser offense, and proof of the distinguishing elements was not sufficiently in dispute. Again relying on *Carey*, 715 P.2d at 249, the trial court specifically determined that the sexual battery instruction was not appropriate because appellant's sole defense of consent left the jury with but two alternatives—guilty of the greater offense or not guilty.

[¶ 38] The elements of the crime of first-degree sexual assault, as contained in the instruction given to the jury in this case, which jury instruction appears to have been based on Wyoming Criminal Pattern Jury

Instruction No. 23.02B, and to which there was no objection, are as follows:

1. On or between the dates of July 21 and July 22, 2001;
2. In Johnson County, Wyoming;
3. The defendant, Dale William Dean, Sr.;
4. Inflicted sexual intrusion on the victim . . . by penetrating her vagina with his finger(s); and
5. The defendant caused submission of [the victim] by threat of death, and/or threat of serious bodily injury, and/or threat of extreme physical pain; and
6. [The victim] reasonably believed that the defendant had the present ability to execute such threat(s).

[¶ 39] The jury was instructed that the elements of the first count of third-degree sexual assault were as follows:

1. On or between the dates of July 21 and July 22, 2001;
2. In Johnson County, Wyoming;
3. The defendant, Dale William Dean, Sr.;
4. Inflicted sexual contact on the victim . . . to her breast(s); and
5. The defendant caused submission of [the victim] by threat of death, and/or threat of serious bodily injury, and/or threat of extreme physical pain; and
6. [The victim] reasonably believed that the defendant had the present ability to execute such threat(s).

The elements instruction for the second count of third-degree sexual assault was identical, except that "by forcing the victim to masturbate the defendant" was substituted for "to her breast(s)" in the fourth element. In addition, the jury was given the statutory definitions of "sexual intrusion"[10]

reasonably believes that the actor has the present ability to execute these threats[.]

8. As charged in this case, Wyo. Stat. Ann. § 6–2–304(a) provides, in pertinent part:

An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

. . .

(iii) The actor subjects a victim to sexual contact [by causing submission of the victim by threat of death, serious bodily injury or extreme physical pain, and the victim reasonably believes that the actor has the present ability to execute these threats] without inflicting sexual

intrusion on the victim and without causing serious bodily injury to the victim.

9. Wyo. Stat. Ann. § 6–2–313(a) (LexisNexis 2003) states: "Except under circumstances constituting a violation of W.S. 6–2–302 through 6–2–304, 6–2–502 or 14–3–105, an actor who unlawfully subjects another person to any sexual contact is guilty of sexual battery."

10. Wyo. Stat. Ann. § 6–2–301(a)(vii) (LexisNexis 2003) states:

"Sexual intrusion" means:

(A) Any intrusion, however slight, by any object or any part of a person's body, except

and "sexual contact." [11]

[¶ 40] Appellant offered three separate sexual battery instructions as lesser-included offenses to the three charged sexual assault crimes. The first three elements of these instructions were identical to one another and identical to the first three elements of the elements instructions for the charged crimes. The fourth and final element of the proposed instruction as it pertained to the alleged first-degree sexual assault, read as follows: "Unlawfully subjected [the victim] to sexual contact by penetrating her vagina with his finger." The lesser-included offense instructions pertaining to the alleged third-degree sexual assaults substituted, respectively, "by fondling her breasts" and "by forcing her to touch his genitals."

[¶ 41] Appellant's contentions on this issue in his appellate brief mirror those he made in the trial court. First, he argues that the elements of sexual battery are a subset of the elements of the greater crimes. Second, he contends that one cannot commit first- or third-degree sexual assault without committing sexual battery. Third, he opines that it is inherent in the first-degree sexual assault statute that the sexual intrusion is done unlawfully. And fourth, he suggests that the jury could have disbelieved that he threatened the victim or disbelieved that the victim reasonably believed the threat, yet believed that he unlawfully subjected her to sexual contact.

[¶ 42] The State's response to appellant's position, in both the trial court and in this appeal, is meager, at best. During the instruction conference, the prosecutor argued only very briefly that sexual battery "is most certainly not a subset" of first- or third-degree sexual assault, and that there was no evidence to support the giving of the lesser-included offense instructions. In its appellate brief, the State presented only a page-and-a-half discussion of this issue in taking the following position:

> The district court ruled that sexual battery is not a lesser included offense of first or third degree sexual assault. . . . However, regardless of whether it was correct in that determination, the trial court properly declined to give the sexual battery instruction because Appellant claimed his victim consented to the sexual encounters and the jury, accordingly, could not have acquitted him, on that basis, of first or third degree sexual assault but convicted him of sexual battery based on the evidence before it.

[¶ 43] Because the question has not properly been briefed and presented to this Court, we decline to decide at this time whether the elements of the crime of sexual battery are a subset of the elements of the crimes of first- and third-degree sexual assault for the purpose of giving lesser-included offense instructions. [12] We will, however, affirm the trial court's refusal to instruct the jury that sexual battery is a lesser-included offense of either first- or third-degree sexual assault because the trial court was correct in concluding that appellant's admission that the sexual conduct had occurred, combined with his sole defense of consent, left the jury with but two alternatives—guilty of the greater offenses or not guilty.

[¶ 44] For example, appellant admitted the digital penetration that was the basis for the charge of first-degree sexual assault. However, he denied any threat or force, and contended that the act was consensual. Choosing from the facts presented, the jury

---

the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or

    (B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

**11.** Wyo. Stat. Ann. § 6–2–301(a)(vi) states:

"Sexual contact" means touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the

victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]

**12.** An appropriate analysis would require, at least, (1) delving into the definitions of statutory terms such as "sexual intrusion" and "sexual contact," and (2) discussing how "unlawfully" in sexual battery is included in the greater offenses when the sexual battery statute specifically excludes the unlawful circumstances identified in the greater offenses. Citations to authority would help.

could either find him guilty of first-degree sexual assault or not guilty. There was no evidence of some other unlawful sexual contact upon which the jury could have based a finding of guilt of sexual battery. The same analysis also applies to both charges of third-degree sexual assault.

### Was the evidence sufficient to convict appellant of each charge?

[¶ 45] We recently restated our well-established standard for reviewing sufficiency of the evidence claims:

"When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. 'We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.' [*Bloomquist v. State*, 914 P.2d 812, 824 (Wyo. 1996).]"

*Urbigkit v. State*, 2003 WY 57, ¶ 44, 67 P.3d 1207, 1225 (Wyo.2003) (*quoting Williams v. State*, 986 P.2d 855, 857 (Wyo.1999)). *See also Miller v. State*, 2003 WY 55, ¶¶ 22–23, 67 P.3d 1191, 1197 (Wyo.2003) and *Cureton v. State*, 2003 WY 44, ¶ 6, 65 P.3d 1250, 1252 (Wyo.2003).

[¶ 46] Appellant claims that the State failed to prove at least one element of each charged crime and that the victim's "version of events just does not logically make sense." He contends that the evidence shows that, although he had a gun at all times, he did not

threaten to use it, nor did he ever say he would harm the victim. He also contends that the evidence shows that the victim had several opportunities to escape or obtain assistance. Further, he argues that he removed the handcuffs the first time they stopped, which "presumably" was in Campbell County, so there was no evidence of unlawful confinement in Johnson County. Appellant's argument that proof of kidnapping was lacking can be summed up in his assertion that "[the victim] chose to stay with Mr. Dean, even if that was due to her mistaken belief that Mr. Dean would somehow harm her."

[¶ 47] As to the alleged sexual assaults, appellant contends that the State failed to prove that he caused the victim's submission by threat of death, serious bodily injury, or extreme physical pain. Once again, he argues that he never verbally threatened the victim and that his actions did not threaten her "in any menacing way."[13] Finally, appellant argues that the evidence is insufficient to show reasonable apprehension on the victim's part.

[¶ 48] Without restating the facts detailed earlier herein, and without restating the standard of review for sufficiency of the evidence, we can state with no hesitation that acceptance of appellant's arguments would require us to ignore the former and to stand the latter on its head. Our standard of review requires us to accept the State's evidence and to ignore the evidence in conflict therewith, not vice versa. Appellant's argument to this Court is nothing short of an assertion that the jury should have believed him rather than the victim.[14]

[¶ 49] Contrary to what appellant suggests, the record is replete with evidence from which a reasonable jury could conclude beyond a reasonable doubt that the victim was kidnapped and sexually assaulted. The victim testified that appellant abducted her in the nighttime, at gunpoint, forced her face-

---

13. In making this argument, appellant has chosen to ignore the victim's testimony that, after refusing to move into the rear of the van with appellant, she relented and did so when he said, "Am I going to have to use the gun and the handcuffs again?"

14. Appellant did not testify at trial, despite his presentation of this case as a credibility contest between him and the victim. His version was presented through cross-examination of the victim and of police officers who had interviewed him and the victim.

down into his van, handcuffed her, and drove her out of Gillette toward Buffalo. She further testified that, along the way, he repeatedly displayed the gun and that she had sexual relations with him against her will because she feared he was going to kill her.[15] Finally, she also testified that her first real opportunity to escape was in the restaurant where she asked the waitress to call the police. The jury chose to believe the victim and it is not for us to second-guess that decision.

### *Was appellant denied his right to a speedy trial pursuant to W.R.Cr.P. 48 when the trial was not held within 120 days after the date of arraignment?*

[¶ 50] A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Wyo. Const. art. 1, § 10. *Almada v. State,* 994 P.2d 299, 304 (Wyo.1999). This Court has adopted W.R.Cr.P. 48(b) as a procedural mechanism for enforcing this constitutional right. *Almada,* 994 P.2d at 304. Speedy trial issues are reviewed *de novo* by this Court. *Vargas v. State,* 963 P.2d 984, 989 (Wyo.1998).

[¶ 51] Speedy trial violations may be alleged as procedural violations of W.R.Cr.P. 48(b) or as substantive constitutional violations. *See, for example, Vlahos v. State,* 2003 WY 103, ¶¶ 12–24, 75 P.3d 628, 632–35 (Wyo.2003) (rule analysis); *Rodiack v. State,* 2002 WY 137, ¶ 10, 55 P.3d 1, 3 (Wyo.2002) (rule analysis); *Hauck v. State,* 2001 WY 119, ¶ 12, 36 P.3d 597, 600 (Wyo. 2001) (rule and constitutional analysis); *Taylor v. State,* 2001 WY 13, ¶ 6, 17 P.3d 715, 718 (Wyo.2001) (rule analysis); *Jennings v. State,* 4 P.3d 915, 921 (Wyo.2000) (constitutional analysis); *Campbell v. State,* 999 P.2d 649, 655 (Wyo.2000) (constitutional analysis);

*Almada,* 994 P.2d at 304–05 (rule and constitutional analysis); and *Vargas,* 963 P.2d at 992 (constitutional analysis). In the instant case, appellant has not presented a substantive constitutional analysis, but relies solely on an alleged violation of W.R.Cr.P. 48(b). Thus, our review also will be so limited.

[¶ 52] The dictates of W.R.Cr.P. 48(b) are mandatory. *Rodiack,* 2002 WY 137, ¶ 9, 55 P.3d at 3; *Taylor,* 2001 WY 13, ¶ 8, 17 P.3d at 718. Neither party in the instant case disputes that proposition. Rather, the present issue is which version of W.R.Cr.P. 48(b) applies. As originally adopted, the relevant sections of the rule read as follows:

> (2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.
>
> . . .
>
> (6) Any criminal case not tried or continued as provided in this rule shall be dismissed 120 days after arraignment.

W.R.Cr.P. 48(b)(2) and (6). Effective September 1, 2001, the relevant sections were amended to read as follows:

> (2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.
>
> . . .
>
> (5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.

W.R.Cr.P. 48(b)(2) and (5).

[¶ 53] The effective date of the rule's amendment, September 1, 2001, is significant because of the following chronology of events in the instant case:

| | |
|---|---|
| July 23, 2001 | Arrest |
| August 2, 2001 | Bound over to district court |
| August 21, 2001 | Demand for speedy trial filed |
| September 11, 2001 | District court arraignment |
| September 14, 2001 | Scheduling order setting trial for February 19, 2002 |
| February 19, 2002 | Jury trial |

---

**15.** In his appellate brief, appellant makes brief mention of the concept of submission without resistance in analyzing the issue of consent, but he does not present much argument that he mistook a lack of resistance for consent. His primary argument is that he did not use force or threats and that the victim actually consented. *See Seeley,* 715 P.2d at 240–41.

[¶ 54] The effective date of the amendment to W.R.Cr.P. 48(b) was forty days after appellant was arrested and ten days before he was arraigned. At the arraignment, the trial was scheduled for February 19, 2002—161 days later. Clearly, that date met the requirements of the new rule, but not the old rule. The question is whether the rule in effect at the time of appellant's arrest or the rule in effect at the time of his arraignment applies to this case.

[¶ 55] Generally, amendments to court rules apply prospectively, but amendments that are procedural, rather than substantive, apply to pending actions, so long as they do not affect substantive rights. 20 Am.Jur.2d *Courts* § 53 at 372 (1995); 21 C.J.S. *Courts* § 133 at 155 (1990). *See, for example, Graf v. Whitaker,* 192 Ariz. 403, 966 P.2d 1007, 1009 (1998) (court rule controlled manner, but not substance, of right to appeal from arbitration award); *In re Cameron T.,* 190 Ariz. 456, 949 P.2d 545, 547–49 (1997) (court rule fixed procedural method for asserting substantive rights in juvenile proceeding); *State v. Maxey,* 125 Idaho 505, 873 P.2d 150, 153 (1994) (how courts rule on waiver of right to counsel is procedural rather than substantive, so court rule prevails over statute); *State v. Templeton,* 107 Wash. App. 141, 27 P.3d 222, 225–26 (2001), *rev'd on other grounds,* 148 Wash.2d 193, 59 P.3d 632, 646 (2002) (court rule concerning accrual of right to counsel is procedural); and *Abad v. Cozza,* 128 Wash.2d 575, 911 P.2d 376, 383 (1996) (court may adopt rules to carry out statutory deferred prosecution scheme so long as rules do not diminish statutory or constitutional right). Long ago, we distinguished substantive law from procedural law:

" ' * * * It may * * * be assumed that the term "substantive law" is not mathematically exact, but as respects both the terms "procedure" and "substantive law" there is a possible twilight zone. Examination of many authorities leads me to conclude that substantive law as constitutionally, legislatively and judicially recognized, includes those rules and principles which fix and declare the primary rights of individuals as respects their persons and their property, and quite generally as fixing the type of remedy available in case of invasion of those rights. As to the term "procedure," I conceive it to include those rules and forms applicable in the administration of the remedies available in cases of invasion of primary rights of individuals in Courts or other lawfully constituted tribunals and agencies. Such rules include both pleading and practice, including all rules and forms which govern the parties, their counsel and the Court throughout the progress of the case from the time of its initiation until final judgment and its execution. * * *' [*Kellman v. Stoltz,* 1 F.R.D. 726, 728 (N.D.Iowa 1941).]"

Briefer definitions will perhaps suffice for our purposes here:

" ' * * * The substantive law is that part which creates, defines, and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion. * * *' *Mix v. Board of Com'rs of Nez Perce County,* 18 Idaho 695, 112 P. 215, 220. 'Courts generally agree in defining the terms "substantive" and "adjective" that "substantive" law creates, defines, and regulates rights as opposed to "adjective" or "procedural" law which provides the method of enforcing and protecting such duties, rights, and obligations as are created by substantive laws. * * *' *In re McCombs' Estate,* Ohio Prob., 80 N.E.2d 573, 586."

More specific to the present question, the court said in *Ogdon v. Gianakos,* 415 Ill. 591, 114 N.E.2d 686, 689, that "procedure" is the machinery for carrying on the suit, including pleading, process, evidence, and practice, and held that a statute relating to the proper method of obtaining jurisdiction in respective instances was a part of the law of procedure and not of substantive law. Similarly, in the case before us, the question of the requirement of serving upon the other parties a demand for a trial by jury is one of procedure and is governed by the rules.

*State ex rel. Frederick v. District Court of Fifth Judicial Dist. In and For Big Horn County,* 399 P.2d 583, 585 (Wyo.1965). We

have continued to adhere to these definitions. *See, for example, Sheneman v. Division of Workers' Safety and Compensation Internal Hearing Unit,* 956 P.2d 344, 350 (Wyo.1998) and *Smithco Engineering, Inc. v. International Fabricators, Inc.,* 775 P.2d 1011, 1018 (Wyo.1989). Other courts follow similar definitions in evaluating the application of court rules. *See, for example, Roddy v. County of Maricopa,* 184 Ariz. 625, 911 P.2d 631, 633 (1996).

[¶ 56] While we have not previously specifically addressed the question of whether W.R.Cr.P. 48(b) is substantive or procedural, we have suggested the answer by repeatedly referring to the rule as a "procedural mechanism" for enforcing the constitutional speedy trial right. *See, for example, Taylor,* 2001 WY 13, ¶ 8, 17 P.3d at 718; *Almada,* 994 P.2d at 304; *Detheridge v. State,* 963 P.2d 233, 235 (Wyo.1998); and *Yung v. State,* 906 P.2d 1028, 1032 (Wyo.1995). It was not the purpose of W.R.Cr.P. 48(b) to create a speedy trial right or to define or embody the existing constitutional right. Rather, the purpose of the rule was to provide the trial courts with a procedure for implementing the right and to provide this Court with another means of measuring compliance.[16]

 [¶ 57] We recognize that amendments to court rules should not be retroactively applied to the prejudice of the parties.[17] Certainly, a showing of prejudice or actual interference with the constitutional speedy trial right by application of the 180–day rather than the 120–day setting period might require additional analysis. Appellant has not, however, presented substantive constitutional arguments, "apparently because this time period is not presumptively prejudicial or significantly long and would not be found to violate his constitutional rights absent a showing of prejudice." *Taylor,* 2001 WY 13, ¶ 6, 17 P.3d at 718.

[¶ 58] We conclude that the trial court did not violate W.R.Cr.P. 48(b) when it set the jury trial within 180 days after the

arraignment and held the trial within 161 days after the arraignment. As a rule establishing court procedures, the amended version of W.R.Cr.P. 48(b) was in effect when appellant was arraigned, and the trial was set within the time allowed by the rule.

### CONCLUSION

[¶ 59] The trial court did not err in refusing to instruct the jury that false imprisonment is a lesser-included offense of kidnapping nor in refusing to instruct the jury that sexual battery is a lesser-included offense of both first-degree and third-degree sexual assault. There was sufficient evidence to convict appellant of each charge and appellant was not denied his right to a speedy trial.

[¶ 60] We affirm.

---

16. We say "another" because we also have adopted the four-part constitutional test articulated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See, for example, Vargas,* 963 P.2d at 992.

17. There is an argument to be made that application of the amended rule in the instant case is not even retroactive inasmuch as it was in effect before the district court arraignment took place.