Sandra HOUGHTON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–99.

Supreme Court of Wyoming.

May 18, 2000.

Representing Appellant: Sylvia Lee Hackl, Public Defender; Donna Domonkos, Appellate Counsel; and T. Alan Elrod and Scott J. Olheiser, Student Interns, Wyoming Defender Aid Program.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program, and Sandra Boudreaux, Student Intern.

Before LEHMAN, C.J., and THOMAS, MACY, and GOLDEN, JJ., and TAYLOR, J., Ret.

LEHMAN, Chief Justice.

This is the second time we have considered Sandra Houghton's appeal from a conviction of felony possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(iii). In the first appeal, a majority of this court found that the search of Houghton's purse in the course of a traffic stop of the car in which she was riding violated the Fourth Amendment to the United States Constitution and reversed the conviction on that basis without addressing the other issues raised by Houghton. *Houghton v. State,* 956 P.2d 363 (1998). The State sought review of that ruling by the United State Supreme Court, which held that the search did not violate the Fourth Amendment and reversed our holding. *Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408, (1999). On remand to this court from the United States Supreme Court, we are left to consider the three remaining issues raised by Houghton but not addressed in our prior opinion. We find reversible error on the first of those issues, the district

court's failure to give a lesser-included offense instruction, and reverse the conviction.

## ISSUES

Houghton raises the following issues not previously addressed by this court:

1. Whether the trial court denied her fundamental constitutional right to present a defense by refusing to submit a lesser-included offense instruction to the jury;

2. Whether the trial court violated her right to counsel by interrogating her after she had invoked her constitutional right to counsel;

3. Whether the trial court deprived her of her fundamental constitutional right of confrontation by refusing her request for a continuance in order to obtain a transcript of a witness' prior testimony.

## FACTS

On July 23, 1995, at approximately 1:00 a.m., the vehicle in which Houghton was riding as a passenger was stopped by a police officer for speeding and a faulty brake light. While searching the vehicle relative to the driver's open and obvious possession of a syringe which the driver freely admitted he used to take drugs, the officer searched Houghton's purse which he found in the car. Inside the purse, the officer found two bags—a brown bag with a syringe inside containing what was later determined to be approximately .51 grams of methamphetamine and a black bag containing a syringe and a vial. The vial from the black bag was later determined to contain .27 grams of methamphetamine. The substance found in the syringe from the black bag was also determined to be methamphetamine. Witnesses for the State gave differing testimony as to the amount of methamphetamine contained in the syringe. The State's expert witness described it as a residue of an undeterminable amount; a DCI agent involved in the investigation testified that it contained .10 gram of methamphetamine.

At the scene, Houghton admitted ownership of the black bag and its contents but denied any knowledge or ownership of the brown bag and its contents. Houghton was arrested and charged with felony possession of methamphetamine in a liquid amount greater than 0.3 of a gram. The day after her arrest, July 24, 1995, Houghton was brought before the court for an initial appearance. She was advised by the court that she had the right to an attorney; that she had the right to remain silent; and that, if she chose not to exercise her right to silence, anything she said could be used against her. Houghton asserted her Sixth Amendment right to counsel by asking the court to appoint counsel to represent her in forma pauperis.

On July 25, 1995, Houghton made a written request from the Natrona County Detention Center to speak to Pat Bergen, an officer with the Casper Police Department. She received a response stating that Lieutenant Bergen had been notified and would come to see her when he could. On July 31, 1995, an order was entered appointing counsel to represent Houghton.

The day after the order appointing counsel was entered, August 1, 1995, Agent Chris Peters of the Department of Criminal Investigation interviewed Houghton. It is undisputed that Peters' interview of Houghton was unrelated to Houghton's request to speak with Bergen; Peters testified that he was not aware of the request until sometime later. According to Peters' testimony, the purpose of his interview was to obtain information about the driver of the vehicle in which Houghton was riding on the night of her arrest. In the course of the questioning by Agent Peters, Houghton allegedly made inculpatory statements concerning the methamphetamine found in her purse at the time of her arrest. After having made the statements, Houghton invoked her right to remain silent and the interview ended.

Sometime later, in response to Houghton's earlier requests to speak with him, Lieutenant Bergen met with Houghton. During their conversation, Houghton told Bergen she had spoken with Agent Peters but that he ended the interview after she invoked her right to silence. Believing that he should not be talking with her either, given her earlier assertion of her right to silence, Bergen ended the conversation.

Prior to trial, on October 17, 1995, Houghton filed a motion in limine to preclude any reference during the trial to statements she made to any law enforcement officer after the appointment of counsel. She also filed a motion to suppress aimed specifically at her statements to Agent Peters in the August 1 interview. A hearing was held on the motions on November 1, 1995. In a decision letter issued November 3, 1995, the district court denied the motions, finding that Houghton had requested to communicate with law enforcement; that Peters' purpose in interviewing Houghton was not to obtain information about her but rather general information about methamphetamine and drug trafficking; that Houghton knowingly and intelligently chose to communicate with law enforcement without her attorney present; and that she knowingly and intelligently waived her right against self incrimination prior to making the statements to Peters. The case proceeded to trial on November 6, 1995, and, based on the court's ruling, Peters testified that Houghton admitted during the interview that all of the items found in her purse, including the syringe containing the larger amount of methamphetamine, belonged to her.

On the second day of trial, Houghton submitted proposed jury instructions to the court, including an instruction on the lesser-included offense of misdemeanor possession. Houghton argued that the instruction was warranted because the elements of misdemeanor possession are identical to part of the elements of felony possession and that the evidence reasonably supported a jury finding that Houghton possessed less than the 0.3 of a gram of methamphetamine required for felony possession and that she, therefore, committed the lesser offense of misdemeanor possession. The district court refused to give the instruction; its reasons for doing so, however, do not appear in the record before us. Houghton objected to the court's refusal to give the lesser-included offense instruction.

On November 7, 1995, the jury returned a verdict of guilty on the charge of possession of a controlled substance in excess of 0.3 grams. Houghton was sentenced to a term of not less than two nor more than three years in the Wyoming Women's Center with credit for time served.

## STANDARD OF REVIEW

Where proper objection is made on the record, a district court's failure to give a lesser-included offense instruction is subject to a de novo standard of review. *Paramo v. State*, 896 P.2d 1342, 1344 (Wyo.1995). We review a district court's denial of motion to suppress under an abuse of discretion standard, which means an error of law committed by the court under the circumstances. *Madrid v. State*, 910 P.2d 1340, 1344 (Wyo.1996).

## DISCUSSION

### The Lesser–Included Offense Instruction

A lesser-included offense instruction is appropriate where: 1) all of the elements of the lesser offense are also elements of the greater offense, and 2) there is some evidence that would rationally permit a jury to find the accused guilty of the lesser offense and not guilty of the greater offense. *State v. Keffer*, 860 P.2d 1118, 1134 and 1136 (Wyo.1993). The failure to give a lesser-included offense instruction when such an offense exists and the evidence presented would support conviction of that offense constitutes reversible error. *Paramo*, 896 P.2d at 1344.

Under Wyoming's possession statute, possession of methamphetamine is a misdemeanor if the substance weighs no more than 0.3 gram; it is a felony if the substance weighs more than 0.3 gram. The State concedes that the elements of misdemeanor possession are also elements of felony possession and that misdemeanor possession is a lesser-included offense of felony possession.

We turn then to the question whether there was some evidence that would rationally permit the jury to find Houghton guilty of the lesser-included offense of misdemeanor possession and not guilty of felony possession. That is, was there some evidence from which the jury could have concluded that Houghton possessed 0.3 of a gram or less of methamphetamine? In con-

sidering this question, we are bound by the rule that only a minimal amount of evidence is necessary to support the giving of a lesser-included offense instruction. *Nava v. State*, 904 P.2d 364, 367 (Wyo.1995). In addition, we keep in mind that:

> To convict for possession of illicit drugs, the prosecution must establish that [the defendant]: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance. *Saldana v. State*, 846 P.2d 604, 620 (Wyo.1993); *Wise v. State*, 654 P.2d 116, 119 (Wyo.1982). It is not necessary to offer direct evidence of the defendant's actual possession of the contraband. "[C]ircumstantial evidence linking together a series of facts" allowing a reasonable inference that the defendant had the requisite control and knowledge of the substance is sufficient to show constructive possession. *Wise*, 654 P.2d at 119. The court must consider the totality of the circumstances when determining whether sufficient evidence was presented to allow the jury to infer that the defendant had the requisite control and knowledge of the contraband. *Urrutia v. State*, 924 P.2d 965, 967 (Wyo.1996).

*Mora v. State*, 984 P.2d 477, 481 (Wyo.1999) (quoting *Seeley v. State*, 959 P.2d 170, 176 (Wyo.1998)).

At trial, Houghton testified that the black bag found in her purse belonged to her but that the brown bag was not hers and she did not know how it got into her purse. Patrolman Baldwin testified that when he removed the brown bag from Houghton's purse on the night of her arrest, she stated that it was not hers and could not say whose it was. Mr. Angelos, a forensic scientist from the state crime lab who testified on behalf of the State, and who was the only expert witness in the case, testified that the syringe found in the brown bag contained .51 grams of methamphetamine, the syringe found in the black bag contained a residue of methamphetamine of undeterminable weight, and the vial found in the black bag contained .27 grams of methamphetamine. From this testimony,

the jury rationally could have concluded, if it believed Houghton's testimony that only the black bag was hers and the State's expert testimony that the weight of the residue in the syringe found in the black bag was undeterminable, that she was in possession of only .27 grams of methamphetamine, less than the amount required for conviction of felony possession.

■ The State argues that the evidence was not such that the jury could have reached that conclusion because Agent Peters and Patrolman Baldwin testified that the syringe found in the black bag which Houghton admitted was hers contained .10 gram of methamphetamine. That amount, the State correctly asserts, combined with the .27 gram in the vial exceeds the amount required for conviction of felony possession. Therefore, the State argues, the evidence supports the conviction for felony possession even if the jury believed Houghton's testimony that only the black bag belonged to her.

The State's argument in this regard is well taken up to the point that it says the evidence was undisputed that the second syringe contained .10 gram of methamphetamine. While it is true that Agent Peters and Patrolman Baldwin testified on behalf of the State that the second syringe contained .10 gram, their testimony was refuted by the testimony of the only expert witness in the case, Mr. Angelos, the forensic scientist called on behalf of the State who had performed thousands of tests relating to controlled substances. He testified that the weight of the residue found in the second syringe was undeterminable. Thus, if the jury believed his testimony, the only measurable amount of methamphetamine in the black bag which Houghton admitted was hers was the .27 gram of methamphetamine found in the vial, an amount insufficient to support conviction for felony possession.

■ Because there was some evidence that would rationally permit the jury to find Houghton guilty of misdemeanor possession and not guilty of felony possession, we hold that the lesser-included offense instruction should have been given. The district court erred in refusing to give the instruction.

The case is, therefore, reversed and remanded for a new trial.

Given our determination that the district court committed reversible error in not giving the lesser-included offense instruction and that Houghton is entitled to a new trial, we address Houghton's second issue—whether her Sixth Amendment right to counsel was violated when she was interviewed outside the presence of counsel on August 1, the day after counsel was appointed to represent her.

### Interrogation after Invoking Right to Counsel

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that an accused person in custody who has expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. 451 U.S. at 484–85, 101 S.Ct. at 1885. The Court further held that when an accused has invoked his Fifth Amendment right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. 451 U.S. at 484, 101 S.Ct. at 1885.

Thereafter, in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Court extended its holdings in *Edwards* to apply to a defendant who has been formally charged with a crime and has requested appointment of counsel at his arraignment. The Court reasoned that the Sixth Amendment right to counsel at a postarraignment interrogation requires at least as much protection as the Fifth Amendment right to counsel at a custodial interrogation. 475 U.S. at 632, 106 S.Ct. at 1408–09. Thus, under *Jackson*, where a defendant asserts his right to counsel at an arraignment by requesting the appointment of counsel, any subsequent waiver of the right to counsel during police-initiated interrogation is invalid.

Under *Jackson*, the question we must answer in the present case is whether the interview conducted by DCI Agent Peters the day after Houghton invoked her right to counsel was police initiated. If it was not, if the interview instead could be said to have been initiated by Houghton, the *Jackson* rule does not apply, and we must then determine whether the purported waiver obtained from Houghton at the beginning of the interview was knowing and intelligent under the totality of the circumstances. *Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409.

In *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983), the Court held that the accused initiated conversation with the authorities by asking "Well, what is going to happen to me now?" The Court found that this question "evinced a willingness and a desire for a generalized discussion about the investigation" and was not "a necessary inquiry arising out of the incidents of the custodial relationship." 462 U.S. at 1046, 103 S.Ct. at 2835.

Applying this test, we are not persuaded that the interview conducted by DCI Agent Peters violated Houghton's Sixth Amendment right to counsel. By asking to speak with Police Officer Bergen, Houghton evinced a willingness and a desire for a generalized discussion with the authorities. That DCI Agent Peters, rather than Police Officer Bergen, spoke with her does not change our conclusion. The test is whether a defendant "himself initiates dialogue with *the authorities.*" *Oregon v. Bradshaw*, 462 U.S. at 1044, 103 S.Ct. at 2834 (emphasis added) (quoting *Wyrick v. Fields*, 459 U.S. 42, 46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982)). Thus, where a defendant reinitiated communication with an FBI agent after earlier invoking his Fifth Amendment right to counsel, state law enforcement officials were not barred from questioning the defendant even though they were unaware of the reinitiation. *Willie v. Maggio*, 737 F.2d 1372, 1384 (5th Cir.1984). *See also Hopkins v. State*, 263 Ga. 354, 434 S.E.2d 459, 462 (1993).

Here, after invoking her right to counsel at the July 24 court appearance, Houghton initiated contact with the authori-

ties by requesting in writing on July 25 to speak with Officer Bergen. We turn, therefore, to the question whether the waiver obtained by Agent Peters on August 1 was knowing and intelligent.

Houghton was advised at her court appearance on July 24, 1995, that she had the right to counsel and to remain silent and that if she chose not to exercise her rights anything she said could be used against her. The same day, Houghton signed a written statement of her constitutional rights indicating that she had read the statement and fully understood her rights. On July 25, 1995, the day after she was informed of her rights and requested that an attorney be appointed, Houghton made a written request to speak with Police Officer Bergen. Testimony at the suppression hearing reflected that Houghton asked to speak with Bergen because she viewed him as a friend. On July 31, 1995, Houghton signed another statement of her rights and acknowledged that she understood them. Counsel was appointed to represent her that same day.

The next day, DCI Agent Peters met with Houghton in an interview room at the police department. Peters testified, and his report reflects, that he advised Houghton of her Miranda rights and she agreed to talk to him. According to Peters, Houghton expressed no hesitancy in talking with him. After talking with him for some period, Houghton stated she "did not wish to talk any further and wanted to speak with an attorney before she made any more statements." After this interview, Houghton made phone calls to Peters on at least two occasions and spoke with Police Officer Bergen on one occasion as well.

Given the totality of these circumstances, we hold that Houghton knowingly and intelligently waived her Sixth Amendment right to counsel and her Fifth Amendment right against self-incrimination. Prior to agreeing to talk with Agent Peters, Houghton was advised of her rights on at least three occasions and knew that counsel had been appointed to represent her. Despite having been informed of her rights, Houghton initiated contact with the authorities by requesting to speak with a police officer. Despite the knowledge that counsel had been appointed to represent her, Houghton agreed to talk with Agent Peters. That she invoked her right to silence and to counsel during the interview with Peters is evidence that she understood her rights. That she later reinitiated contact with Peters and spoke with Officer Bergen without her attorney present even after invoking her rights during the August 1 interview is evidence that she freely and voluntarily chose to communicate with the authorities without her attorney present. The district court did not err in finding that Houghton's statements were admissible and that the motion to suppress should be denied. On remand, Houghton's statements to Peters are admissible as evidence in the new trial.

### Request for Continuance

We do not find it necessary to address Houghton's final issue—whether the district court erred in denying her request for a continuance until such time as she could obtain a transcript of the suppression hearing. On remand, Houghton will have the transcript and can then determine whether Peters is impeachable based upon any inconsistency in his sworn testimony.

Reversed and remanded for further proceedings consistent with this opinion.