2004 WY 105

**Clinton GORDON, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 03–65.

Supreme Court of Wyoming.

Sept. 9, 2004.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel; William B. Pilger, Student Intern; and Darcy A. Critchfield, Student Intern.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director PAP; and Joshua D. Stensaas, Studen Intern PAP.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] After the district court denied his motion to suppress statements he made to law enforcement, Clinton Gordon entered a conditional plea of nolo contendere to a charge of taking indecent liberties with a minor in violation of Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2003). With his plea, he reserved the right to appeal the denial of his motion to suppress. We find no error in the district court's denial of the suppression motion and affirm Mr. Gordon's conviction.

## ISSUES

[¶ 2] Mr. Gordon claims the district court erred in denying his motion to suppress statements to law enforcement. The State asserts the district court did not error in denying the motion.

## FACTS

[¶ 3] On the morning of January 9, 2002, in the course of investigating an allegation involving indecent liberties with a minor, Casper police officers interviewed BH, a fifteen-year-old female. BH informed police she had been living with Mr. Gordon, a forty-one year old male, on and off for the past ten months during which time the two had sexual relations.

[¶ 4] A short time later that same afternoon, police officers conducted an interview with Mr. Gordon. Detective Matt Waldock began the interview by reading Mr. Gordon his Miranda rights and having Mr. Gordon read and initial the waiver of his rights. Mr. Gordon read and initialed the waiver.

[¶ 5] During the first part of the interview with Detective Waldock, Mr. Gordon denied having sexual relations with BH. After questioning Mr. Gordon for thirty to forty-five minutes, Detective Waldock left the room for a short time and returned with Sergeant Chris Walsh and together the officers resumed the questioning. Approximately fifteen minutes into this part of the interview, Mr. Gordon indicated he "might need to talk to an attorney." The officers stopped the interview and were leaving the room when Mr. Gordon asked them if they would have allowed him to go home if he had answered their questions. Sergeant Walsh responded that Mr. Gordon probably would have gotten to go home if he had answered the questions. At that point, Mr. Gordon indicated he would talk. The police officers left the room but returned a few minutes later after Mr. Gordon began banging on the door and asking them to come back and talk to him.

[¶ 6] When the officers came back into the interview room, detective Waldock brought with him a form authorizing law enforcement to continue the interview at Mr. Gordon's request. He explained the form to Mr. Gordon, told him they could not make any promises and specifically told him they could not promise that he could go home if he talked to them. Mr. Gordon stated he still wanted to talk to them and signed the form. During the interview that followed, Mr. Gordon admitted to having sexual relations with BH. The officers placed Mr. Gordon under arrest and he was taken to the Natrona County Detention Center. During their interview of Mr. Gordon neither officer noticed any behavior suggesting Mr. Gordon was under the influence of an intoxicant.

[¶ 7] When Mr. Gordon arrived at the detention center, officer Zachary Winter booked him into the facility. Officer Winter noticed Mr. Gordon was sweating, agitated and unsteady and asked Mr. Gordon if he was "on anything." Mr. Gordon responded that he had taken methamphetamine. Officer Winter reported this information to Diane Hilterbrand, the nurse who conducted a pre-incarceration assessment of Mr. Gordon, including an assessment for drug and alcohol use. From her observation of Mr. Gordon, Ms. Hilterbrand concluded he was intoxicated. She questioned him concerning drug use and he informed her that he had used methamphetamine that day.

[¶ 8] Earlier that same day, prior to his interview with law enforcement, Mr. Gordon also spoke with Carole Hardy–Ekstrom, a substance abuse counselor at New Horizons in Casper, Wyoming. She observed his behavior to be paranoid and irrational and asked whether he was under the influence of methamphetamine. Mr. Gordon also spoke to his boss twice that day. During those conversations, he made strange noises and gave unclear answers to questions.

[¶ 9] On January 10, 2002, the State filed an information charging Mr. Gordon with ten felony counts of indecent liberties with a minor in violation of § 14–3–105. At his arraignment on February 13, 2002, Mr. Gordon entered pleas of not guilty by reason of mental illness or deficiency and claimed he was not triable because of mental illness. The district court ordered Mr. Gordon to undergo a psychological evaluation at the Wyoming State Hospital. Based upon that evaluation, the examiner filed a report in which he concluded that Mr. Gordon was not suffering from mental illness or deficiency as defined by Wyo. Stat. Ann. § 7–11–304(a) (LexisNexis 2003)[1] and was competent to proceed under Wyo. Stat. Ann. § 7–11–302 (LexisNexis 2003)[2].

[¶ 10] Meanwhile, Mr. Gordon filed a motion to suppress the statements he made during the police interview, claiming they were inadmissible under the United States and Wyoming Constitutions because he was deceived into making statements that were not of his own free and deliberate choice and the statements were involuntary because he was under the influence of a controlled substance. The district court held an evidentiary hearing on the motion. Detectives Walsh and Waldock testified for the State. Mr. Gordon called Officer Winter, nurse Hilterbrand, substance abuse counselor Hardy–Ekstrom and Mr. Gordon's boss as witnesses. At the conclusion of the hearing, the district court denied the motion, finding from the totality of the circumstances that Mr. Gordon's statements were made voluntarily and he was not intoxicated to the point of being substantially impaired.

[¶ 11] Mr. Gordon was tried on July 9 through July 11, 2002, and found guilty by a jury on four counts. He filed a motion for new trial based upon improper comments made by the State during closing argument. After a hearing, the district court concluded the State's argument was inappropriate and granted the motion.

[¶ 12] On October 11, 2002, the district court held a change of plea hearing at which time, pursuant to a negotiated plea agreement, Mr. Gordon entered a plea of no contest to one count of taking indecent liberties with a minor conditioned upon his appeal to

1. § 7–11–304(a):
A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(b).

2. § 7–11–302. Trial or punishment of person lacking mental capacity

(a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity, to:
(i) Comprehend his position;
(ii) Understand the nature and object of the proceedings against him;
(iii) Conduct his defense in a rational manner; and
(iv) Cooperate with his counsel to the end that any available defense may be interposed.

this Court of the order denying his motion to suppress. The State dismissed the remaining counts alleged in the information. Mr. Gordon was sentenced to a term of not less than 42 months nor more than 72 months in the Wyoming State Penitentiary with credit for 276 days previously served.

## STANDARD OF REVIEW

[¶ 13] We apply the following standards when reviewing a district court's ruling on a motion to suppress evidence:

A trial court's ruling on a defendant's motion to suppress a statement on the grounds that it was involuntary, is reviewed de novo. In conducting such a review, we defer to the trial court's findings of fact unless those findings are clearly erroneous. This Court considers all the evidence in the light most favorable to the trial court's determination because the trial court has the opportunity to hear the evidence and to assess the credibility of witnesses. The Fifth and Fourteenth Amendments to the United States Constitution, and Wyoming Constitution Article 1, §§ 6 and 11, require that confessions be voluntary. A statement that is obtained by coercion is not trustworthy and may not be used at trial against the person who made it. A defendant is deprived of the right to due process of law if an involuntary statement is admitted at his trial. A statement is considered to be voluntary if the defendant of his own free and deliberate choice, and not because of intimidation, coercion or deception, makes it. The prosecution has the burden to prove, by a preponderance of the evidence, that a defendant's statement is voluntary. *Edwards v. State*, 973 P.2d 41, 48 (Wyo.1999).

*Hannon v. State*, 2004 WY 8, ¶ 12, 84 P.3d 320, ¶ 12 (Wyo.2004).

## DISCUSSION

[¶ 14] Mr. Gordon relies on the following assertions to support his claim that his statements to law enforcement were involuntary and should have been suppressed: 1) he was in custody and not free to leave; 2) he was intoxicated on methamphetamine and incapable of understanding the consequences of

waiving his Miranda rights; 3) he was not given the opportunity to confer with counsel; 4) he made the statements during an interrogation; 5) he made the statements in response to an overt or implied threat or promise by law enforcement officials; 6) the circumstances of the interview caused him to make involuntary statements; and 7) his mental condition rendered his statements involuntary. The State responds to Mr. Gordon's first assertion that he was in custody during the interview by "assuming for the sake of argument that he was in custody at some point during the interview." We, therefore, assume Mr. Gordon was in custody and do not address that assertion. Because Mr. Gordon's argument in support of his fourth assertion is simply a restatement of the argument he makes in his first assertion, we also address those issues as one. We address Mr. Gordon's second and seventh assertions as one because they are essentially the same argument—Mr. Gordon's statements were involuntary because he was intoxicated and incapable of understanding what was happening at the time he made them. We address the other assertions separately.

### *Intoxication*

[¶ 15] In *Stone v. State*, 745 P.2d 1344, 1348 (Wyo.1987) we said:

[I]ntoxication from drugs or alcohol does not per se establish involuntariness. Instead, for intoxication to render a confession involuntary, the impairment must be so great as to deprive an individual of a capacity to understand the meaning of his statements. Even though a defendant appears intoxicated, the fact that he understood what he was doing, carried on a conversation and responded to questions will render the statements admissible. The proper inquiry regarding intoxication is whether a confession cannot be said to be the product of rational intellect and free will because of extreme intoxication.

We applied these principles in *Stone* to uphold the trial court's denial of a motion to suppress statements the defendant made to law enforcement when he was intoxicated. We observed that the denial came after a

lengthy suppression hearing where the trial court heard the testimony of a number of witnesses. We found it noteworthy that despite the defendant's undisputed intoxicated state, law enforcement officials testified he answered questions intelligently, was coherent, and did not have the appearance of being intoxicated.

[¶ 16] Like the trial court in *Stone*, the district court in Mr. Gordon's case denied the motion after a full hearing during which six witnesses testified. Also as in *Stone*, the two detectives who conducted the interview testified that despite some odd behavior, Mr. Gordon gave appropriate answers to and appeared to understand their questions and they had no trouble understanding him. The difficulty in this case is that, unlike the testimony in *Stone*, the testimony of the two detectives that they saw no indication in Mr. Gordon of drug-induced intoxication contrasted sharply with the testimony of witnesses who had contact with him before and after the interview that they were immediately aware of behavior indicative of methamphetamine-induced intoxication. We find this contrast in testimony troubling, particularly in light of the detectives' testimony that they had experience interviewing people under the influence of methamphetamine and were familiar with the signs of methamphetamine-induced intoxication. It is surprising that they saw no indication of such intoxication in Mr. Gordon, while others who saw him before and after the interview noticed it immediately. However, the totality of the evidence presented supports the district court's denial of the suppression motion.

[¶ 17] Looking closely at the testimony of Ms. Hardy–Ekstrom, Mr. Winter and Ms. Hilterbrand, they each testified that even though Mr. Gordon exhibited symptoms consistent with methamphetamine-induced intoxication and admitted methamphetamine use that same day, he appeared to understand the questions asked of him and answered them appropriately. Mr. Winter and Ms. Hilterbrand also testified Mr. Gordon appeared to understand where he was. Under the totality of the circumstances, we cannot conclude Mr. Gordon's impairment was so great as to deprive him of the capacity to understand the meaning of his statements. Even though the evidence suggests he was intoxicated, it also suggests he understood what he was doing, carried on a conversation and responded to questions. The totality of the circumstances suggest his statements were the product of rational intellect and free will. We hold that the trial court did not error in declining to admit Mr. Gordon's statements on the grounds that they were involuntary due to intoxication.

### Denial of opportunity to confer with counsel

[¶ 18] Mr. Gordon asserts that once he stated that he "might need to talk to an attorney," the detectives were required to cease further questioning. Because they did not, he contends, the statements he made thereafter were inadmissible. The State responds that because Mr. Gordon initiated further communication with the officers after stating that he might want to talk to any attorney, the statements that followed were properly admitted.[3]

[¶ 19] The law in Wyoming is that once an accused invokes his right to counsel, he may not be questioned further until counsel is provided to him, unless the accused initiates further communication with authori-

---

3. The State does not argue that Mr. Gordon's statement that he "might need to talk to an attorney" was an equivocal request and we, therefore, do not address the issue. We note, however, that in *Hadden v. State*, 2002 WY 41, 42 P.3d 495, 503 (Wyo.2002) we adopted the rule that a suspect's statement that he might want an attorney is not sufficient to require questioning to cease. We quoted the following excerpt from *Davis v. United States*, 512 U.S. 452, 462, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (emphasis added):

"To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But *we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.*"

ties. *Houghton v. State,* 6 P.3d 643, 647 (Wyo.2000). The test is whether the accused "himself initiates dialogue with the authorities." *Id.* at 648. We applied this standard in *Houghton* to conclude that the defendant's right to counsel was not violated where she "evinced a willingness and a desire for" discussion with authorities after invoking her right to counsel. *Id.*

[¶ 20] Here, after Mr. Gordon stated that he "might need to talk to an attorney," detectives ceased questioning him and prepared to leave the interview room. Mr. Gordon initiated further communication with them by asking whether they would have let him go home if he had answered their questions. The officers answered his question and left the room. They went back into the room only after Mr. Gordon began pounding on the door and asking them to come back and talk to him. At that point, they attempted to verify Mr. Gordon's desire to talk with them despite his statement that he might need an attorney by again advising him of his rights under *Miranda.* After acknowledging that he understood his rights, Mr. Gordon agreed to further communication with them. Under these circumstances, we hold that the district court properly admitted his statements.

### Overt or implied threat or promise by law enforcement officials

[¶ 21] Mr. Gordon also claims his suppression motion should have been granted because law enforcement acted coercively in telling him he probably would have been allowed to go home if he had answered their questions. In *Simmers v. State,* 943 P.2d 1189, 1195–96 (Wyo.1997), we delineated several factors the trial court might consider in applying the totality of the circumstances, including whether any overt or implied threat or promise was directed to the defendant. In *Simmers,* the defendant argued his impaired mental ability when combined with the detective's non-adversarial, friendly interrogation style and promise of possible probation made the interview coercive. We upheld the denial of his suppression motion, finding no evidence in the record tending to indicate that Simmers was unusually suscep-

tible to coercion or easily influenced by the detective.

[¶ 22] We also addressed at length the issue of coercive activity by law enforcement in *Hannon,* ¶ 51. We applied the following standard:

Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

We recognized that a finding of coercion or overreaching by law enforcement does not necessarily require evidence of violence, threats, overt intimidation or misconduct, and that the inquiry is a fact-sensitive one. *Id.,* ¶ 54. In *Hannon,* we considered whether the police officer's non-adversarial style and promise that he would not charge the defendant that day, together with the defendant's low mental ability and acquiescence in the officer's suggestions as to what occurred with respect to the offense charged were sufficient to make the interview coercive. We held that they were not. In reaching that result, we stated as follows:

we do not disturb the trial court's findings unless they are clearly erroneous; the trial court is in the best position to assess the credibility of the witnesses and weight to be given the evidence; and we view the evidence in the light most favorable to the trial court's determination. The trial court held a full evidentiary hearing on Mr. Hannon's motion to suppress the statements and had the opportunity to hear the witness' testimony and weigh their credibility. Viewing the evidence in the light most favorable to the trial court's ruling, we hold it did not abuse its discretion in denying the motion.

*Id.* at ¶ 59.

Considering this precedent, we do not find detective Walsh's statement in response to Mr. Gordon's question that he might have been allowed to go home if he had answered their questions sufficient evidence of coercion to warrant reversal of the district court's ruling.

### Circumstances of the interview caused him to make involuntary statements

[¶ 23] Mr. Gordon alleges suppression of his statements was required because of the totality of the circumstances surrounding the interview. Specifically, he re-alleges the assertions made in his other arguments, i.e. two different detectives interrogated him for one to one and a half hours in a locked interview room at the police department, one of the detectives made in implied promise that he would have been allowed to go home if he had answered the questions, instead of securing counsel when he requested it the detectives left him in a locked room until he pleaded with them to come back, they then resumed questioning him. In *Simmers*, we identified the following circumstances for consideration in applying the totality of circumstances test:

> [T]he atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made[,]whether the defendant was in custody or was free to leave and was aware of the situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Simmers*, 943 P.2d at 1195–96. Applying these standards to the present case, we are unable to find from the circumstances, combined or considered separately, that Mr. Gordon's will was over-borne to the extent that his statements can be said to have been other than the product of rational intellect and free will. As previously stated, the officer's statement that Mr. Gordon may have been allowed to go home if he had cooperated is not sufficient evidence of coercive conduct or police misconduct to warrant reversal. Despite his intoxicated condition, Mr. Gordon seemed to understand and indicated he understood his rights under *Miranda*. There is no evidence his waiver of those rights was anything other than voluntary. Once he invoked his right to counsel, if in fact his statement constituted such an invocation, the detectives ceased their questioning and left the room. They came back only at his urging and resumed further questioning only after again explaining Mr. Gordon his rights and obtaining a second waiver. While Mr. Gordon's behavior at some points during the interview was described as "odd," he answered the questions coherently, appeared to understand them and seemed to know where he was and what was happening. The answers he gave that were considered inappropriate were also described as being evasive. Under the totality of the circumstances, we find no error in the district court's ruling denying Mr. Gordon's motion to suppress.

[¶ 24] Affirmed.